Charles McLAURIN, Petitioner,

v.

William C. BURNLEY, Jr., Custodian of the Greenville City Jail, Respondent.

No. GC678.

United States District Court
N. D. Mississippi,
Greenville Division.

Dec. 29, 1967.

**222**

Reuben V. Anderson, Marian E. Wright, Paul Brest, Iris Brest, Jackson, Miss., R. Jess Brown, Jackson, Miss., Melvyn Zarr, New York City, for petitioner.

J. Robertshaw, Robertshaw, Meredith & Swank, Greenville, Miss., for respondent.

## MEMORANDUM OPINION

CLAYTON, Circuit Judge.*

■ After petitioner's arrest and conviction in the Police Court of Greenville, Mississippi, for breach of the peace (Miss.Code Ann. § 2089.5) and resisting arrest (Code of Ordinances, City of Greenville, § 252 Rev.Ed.1938), there was an appeal to the County Court of Washington County and a de novo separate jury trial on each of these charges with verdicts of guilty; an appeal to the Circuit Court of Washington County, Mississippi, which affirmed petitioner's convictions on the records made in county court; an appeal to the State Supreme Court, which also affirmed [McLaurin v. City of Greenville, 187 So.2d 860 (Miss. 1966)]; and, the filing of a petition for a writ of certiorari with the Supreme Court of the United States, which was denied [McLaurin v. City of Greenville, 385 U.S. 1011, 87 S.Ct. 704, 17 L.Ed. 2d 548 (1967)] (with three judges dissenting). Now in spite of pronouncements that a criminal case should some time reach a final conclusion,[1] petitioner once again has challenged the validity of his convictions and, apparently, still is convinced that he has not been afforded due process of law. The federal issues here presented are substantially the same as those presented to the United States Supreme Court in the petition for writ of certiorari, but the denial thereof cannot be interpreted as an expression of that court's opinion on the merits. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1963).

On February 14, 1967, the petitioner, Charles McLaurin, filed a petition for a writ of habeas corpus in this court and named as respondent thereto the custodian of the Greenville City Jail, located in Greenville, Mississippi.[2] On that same date, the respondent was ordered to show cause why the relief prayed for in said petition should not be granted. The respondent seasonably filed its response, and the issues presented by the petition are now before the court on the record made in the state trial court, the briefs submitted in the United States Supreme Court on petitioner's application for a writ of certiorari, additional briefs submitted in this court and a stipulation which was filed on September 7, 1967. An evidentiary hearing was initially sought by the petitioner, but later, when such a hearing was set, that request was withdrawn, and the case was submitted on the record made in state court, in lieu of any further evidentiary hearing in this court.

■ The entire record aforementioned has been carefully considered. It is clear that the merits of the factual dispute were adequately developed and resolved in the state court, and the conclusions therefrom are supported by the record; that the state employed an adequate fact-finding procedure; that no allegation of newly discovered evidence has been presented and that no reason here exists which indicates that the petitioner did not have a full and fair factual hearing throughout his state litigation. This court now independently so finds. Consequently, *no further evidentiary hearing under the standards set forth in* Townsend v. Sain, 372 U.S. 293, 83 S.Ct.

---

* Sitting by Special Designation as District Judge.

1. E.g., Allison v. Holmon, 326 F.2d 294 (5 Cir. 1963).

2. Who is the Chief of Police.

745, 9 L.Ed.2d 770 (1963), is indicated—a fact which is admitted by petitioner.

In the Supreme Court of Mississippi, by assignment of error, the petitioner alleged: that the state breach-of-the-peace statute (Miss.Code Ann. § 2089.5) is unconstitutional, that his convictions of the subject offenses constituted punishment for the exercise of free speech and that his convictions were founded upon no evidence of guilt.[3] These precise contentions are again presented here, and though they were expressly rejected by the State Supreme Court, it is this court's duty, in considering the present petition for a writ of habeas corpus, to independently apply applicable federal law to the state court findings of fact, if those fact findings were there "reliably found". Townsend v. Sain, supra, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d at 789. No "vital flaw having been found in the process of ascertaining such facts in the state court" [Brown v. Allen, supra, 344 U.S. 443, 73 S.Ct. at 446, 97 L.Ed. at 514 (opinion of Frankfurter, J.)], this court is authorized to and does place much reliance upon that court's factual determinations. Ibid. Such facts are fully reported at Miss., 187 So.2d 854, and are only repeated where necessary here.

Immediately following the trial and convictions[4] of two Negro girls in the Police Court of Greenville, McLaurin began exhorting a crowd of about 200 people, predominately Negro, which had gathered outside the courthouse. In his speech, which was described as being in a "loud voice", he denounced these convictions as "bad" and challenged the crowd with "what they intended to do about it". Obviously many of those present disagreed with these convictions. The crowd was described as "getting disturbed" and as engaged in "mumbling

and muttering". The situation was said to be "tense".

One Negro police officer testified that "in my opinion [it] was a very tense situation and had it kept on anything could have happened". Another officer testified that during petitioner's talk the crowd "seemed to be crowding more and more around the door of the building and the mumbling began to get louder". It seemed as though they were "going to try to take the situation in their own hands". The Chief of Police of Greenville, Mississippi, testified that in his opinion "at any moment we could have had a riot or some violence", because the crowd was "answering him [the petitioner] and becoming emotional".[5] The petitioner, on cross-examination, conceded that when he began to address the crowd they were "sort of upset" and seemed "shocked and confused" at the aforementioned convictions.

The testimony further shows that after some eight or nine minutes of talking, the petitioner was told that he would have to stop speaking unless he obtained a permit. Petitioner purportedly ignored this warning, kept talking and was placed under arrest. When the police officers started taking petitioner inside the building, he "kept pulling back", and the arresting officers were forced to manhandle him to get him into custody. One arresting officer testified that it required all his strength to remove the petitioner from the scene. There is also testimony that petitioner during the course of his being arrested went "limp".

Following the arrest of the petitioner, the crowd allegedly remained in attendance in the immediate area of the municipal building and was later dispersed by a number of police officers described by one witness as a "riot squad".

In county court on the aforementioned jury trials, with testimony of this nature

3. Other assignments of error presented to the State Supreme Court have not here been seriously urged and are considered abandoned.

4. These convictions were later set aside on appeal.

5. All the police officers who testified were experienced law enforcement officials who had on previous occasions had experience in dealing with mobs.

presented and being instructed by the court that "if you find that the defendant was arrested for peaceful protest against racial segregation, then you cannot find the defendant guilty", a trial jury found the petitioner guilty of violating § 2089.5, Miss.Code Ann. (1966 Supp.). Another trial jury also found him guilty of resisting arrest under § 252, Code of Ordinances, City of Greenville, Rev.Ed.1938.[6]

## I.

It is initially asserted as the basis for the present habeas petition that the petitioner was convicted under an unconstitutional state statute. The applicable statute provides:

Any person who disturbs the public peace, or the peace of others, by violent, or loud, or insulting, or profane, or indecent, or offensive, or boisterous conduct or language, or by the intimidation, or seeking to intimidate any other person or persons, or by conduct either calculated to provoke a breach of the peace, or by conduct which may lead to a breach of the peace, or by any other act, shall be guilty of a misdemeanor * * *. Miss.Code Ann. § 2089.5.

■ If this position is well taken, the foundation of the whole proceedings are affected, for "an unconstitutional law is void, and is as no law. An offense created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment." Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

■■ It is now settled that "only a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms". NAACP v. Button, 371 U.S. 415, 83 S. Ct. 328, 9 L.Ed.2d 405. The State of Mississippi has an obvious interest in the preservation and protection of peace and good order within her borders. The Supreme Court has stated that:

This Court respects, as it must, the interest of the community in maintaining peace and order on its streets. Feiner v. People of State of New York, 340 U.S. 315, 71 S.Ct. 303, 95 L.Ed. 295, 297 (1951).

■ The statute now under attack evinces a legislative judgment that speech which is either calculated to lead to a breach of the peace or which may lead to a breach of the peace should be regulated. "Such a declaration of the State's policy [if narrowly drawn to prevent the supposed evil] would weigh heavily in any challenge of the law as infringing constitutional limitations." Cantwell v. State of Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). It has been stated that:

The offense known as breach of the peace embraces a great variety of conduct destroying or menacing public order and tranquility. It includes not only violent acts but acts *and words* likely to produce violence in others. No one would have the hardihood to suggest that the principle of freedom of speech sanctions incitement to riot * * *. When clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears, the power of the state to prevent or punish is obvious. (Emphasis added.) Cantwell v. State of Connecticut, supra, 310 U.S. 296, 60 S.Ct. at 905, 84 L.Ed. at 1220.

Petitioner contends that this statute is unconstitutional in its overly broad scope. During this litigation, the state trial court instructed the jury, in effect, that this statute could not be utilized to punish the petitioner for peacefully protesting racial segregation. The Supreme Court of Mississippi has, on at least two occasions, expressly recognized its duty

---

**6.** This ordinance provides, in part, that:
Any person who knowingly and wilfully opposes or resists any officer of the city in executing, or attempting to make any lawful arrest, * * * shall be guilty of a misdemeanor.

to construe state statutes in such a manner so as to insure that they will not infringe upon any person's constitutional rights. McLaurin v. City of Greenville, supra; Bolton v. City of Greenville, 253 Miss. 656, 178 So.2d 667 (1965). This court "can only take the statute [here challenged] as the state courts read it" [Terminiello v. City of Chicago, 337 U.S. 1, 6, 69 S.Ct. 894, 896, 93 L.Ed. 1131 (1949)]; the interpretation of this statute and policy pronouncement by the state court distinguish this case from the cases of Cox v. State of Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965) and Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963), cited by petitioner as supporting his position.

In *Cox* and *Edwards*, the state courts defined "an offense so as to permit conviction of the petitioners if their speech 'stirred people to anger, invited public dispute, or brought about a condition of unrest'". 372 U.S. 229, 83 S.Ct. at 685, 9 L.Ed.2d at 697. "A conviction resting on any of those grounds," said the court, "cannot stand." Ibid; see also Terminiello v. City of Chicago, supra.

In the case here, the statute, as interpreted by the state court, permits a conviction for speech only if that speech was calculated to lead to a breach of the peace or was of such a nature as ultimately led to a breach of the peace. There can be no conviction for *peacefully* exercising the right of free speech. This is consistent with the principle that one may be found guilty of breach of the peace if he commits acts or makes statements likely to provoke violence and disturbance of good order, even though no such eventuality be intended. Cantwell v. State of Connecticut, supra. Under the statute here in question, so long as the speech was *peaceful*—regardless of whether it invited dispute, brought about a condition of unrest or stirred people to anger—a conviction was not warranted.

By this statute, the State of Mississippi proscribes only nonpeaceful speech, speech calculated to cause or likely to cause a shattering of peace and order,

which the state has a right to do. This limitation on speech is within the state's constitutional power. As interpreted by the state courts in this case, Miss.Code Ann. § 2089.5 (1966 Supp.) is not unconstitutional.

## II.

The petitioner also contends that his state convictions, based upon the actions taken by him, constitute punishment for the exercise of free speech and that therefore, these convictions should be invalidated. In Feiner v. People of State of New York, supra, a similar contention was presented to and rejected by the Supreme Court. In *Feiner*, the petitioner urged in a loud, high-pitched voice that Negro citizens rise up in arms and fight for civil rights. The crowd in *Feiner* was described as restless and was said to have been pushing, shoving and milling around. At least one member of the crowd threatened violence. The Supreme Court in affirming the petitioner's conviction said:

> The findings of the [state] courts as to the condition of the crowd and refusal of the petitioner to obey the police requests, supported as they are by the record of this case, are persuasive that the conviction of the petitioner * * * does not exceed the bounds of proper police action. 340 U.S. 315, 71 S.Ct. at 306, 95 L.Ed. at 300.

The court further said that it was well aware that the ordinary murmurings and objections of a hostile audience cannot be allowed to silence a speaker or to break up an otherwise lawful, public meeting. But, where, said the court, the speaker "passes the bounds of argument or persuasion and undertakes incitement to riot, [the police are not, in the name of free speech,] powerless to prevent a breach of the peace".

In Edwards v. South Carolina, supra, and Cox v. State of Louisiana, supra, the court noted that the factual situation in those two cases was a "far cry" from the situation presented in *Feiner*, for in *Edwards* and *Cox*, there was no violence or threat of violence on the part of any

member of the crowd there involved. In the present case, as in *Feiner*, there is ample evidence to support a jury conclusion that the crowd was restless and potentially dangerous; there is testimony that it was tense—the petitioner admits that the people making up the crowd seemed shocked at the outcome of the trial which they were attending—there is testimony from three experienced police officers that in their opinion mob violence was imminent; there is testimony of some pushing and crowding in and around the entrance to the building.[7] In spite of these similarities, the petitioner urges that *Feiner* is not applicable, but that *Edwards* and *Cox* control. With this contention, this court does not agree.

The state court concluded, at least inferentially, that the petitioner's conduct in light of the surrounding circumstances, exceeded the bounds of argument and persuasion and was calculated to or could have led to a breach of the peace. This court cannot say that such a conclusion is wrong. The evidence was sufficient to warrant the jury verdicts. Therefore, this court holds that petitioner was not convicted of conduct protected by the First and Fourteenth Amendments, and his arrest and conviction did not exceed the bounds of proper state police action.

### III.

■ Finally, petitioner argues that there is no evidence to support his convictions. From what has already been said, it is apparent that there is no merit in this contention, and this court now so finds.

This court judicially knows that over almost all the length and breadth of this country, speeches cast in strikingly similar language, protesting police action in what petitioner here calls "a vigorous and stirring nature", have preceded bar-

baric savagery, bloodshed, death, looting and the wanton destruction of millions of dollars of property. The roll of the places where peace and order were not maintained—where the thin veneer of civilization was torn asunder—where the faceless mob ran rampant, unchecked by the forces of law and civilization—is a long and disgraceful one: Watts, Hough, Rochester, Trenton, * * *.

In Greenville prompt and efficient police work, which went directly to the source of trouble and then established unquestioned control, which was promptly followed by dispersal of what petitioner's counsel describes as a "mob", probably averted what could have been another such tragic occurrence in that community.

More, much more, than the simple arrest of a "civil rights worker" is involved here. At stake, is the right of a community to preserve the peace and to protect itself from riots and disorder.

The petitioner has been afforded every protection of the law. He has had his day in the Police Court of Greenville, in the County Court, in the Circuit Court, in the Supreme Court of Mississippi, and his petition to the Supreme Court of the United States for review of his convictions has been considered and denied. He now has had his day in this court. The record here is unchanged. He offered no new evidence. The time has come, in fact the time is long overdue, for this litigation to come to an end. It is right, it is constitutional (sometimes apparently not the same) for this book to be closed. Insofar as this court is concerned, it is.

An order will be entered to deny the Great Writ to this petitioner, since the record shows that he is not entitled to the extraordinary protection which it affords.

---

7. Which also housed the city jail. It has recently been held that First Amendment freedoms were not violated by the arrest and conviction of civil rights demonstrators for trespassing upon the curtilage of the county jail. Adderley v. State of Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966).