Mary WALKER, Petitioner,

v.

Honorable George B. DILLARD, Judge, Municipal Court, City of Roanoke, Respondent.

Civ. A. No. 72-C-28-R.

United States District Court,
W. D. Virginia,
Roanoke Division.

Aug. 30, 1973.

922

David G. Karro, Legal Aid Society of Roanoke Valley, Roanoke, Va., for petitioner.

Robert E. Shepherd, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, Chief Judge.

On August 25, 1971, the petitioner was convicted by the respondent, Judge George B. Dillard, in the Municipal Court for the City of Roanoke for having violated § 18.1–238, as amended, of the Virginia Code (1960 Repl.Vol.) [1]

---

1. § 18.1–238, as amended, reads in pertinent part: Use of profane, threatening or inde-
cent language over telephone; duty of telephone companies.—If any person shall curse

She was sentenced to serve thirty days in jail, which sentence was suspended for six months, and required to pay a twenty-five dollar fine and costs. Following her conviction, petitioner on August 27, 1971, filed a petition for a writ of habeas corpus in the Supreme Court of Virginia. That court denied relief and dismissed the petition in an order dated January 17, 1972.

Petitioner then filed in this court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Leave to proceed *in forma pauperis* was granted by order of February 22, 1972.

■ Petitioner complains in her petition that: (1) she was denied her constitutional right to a trial by jury in the Municipal Court of the City of Roanoke; (2) her failure to seek a trial *de novo* was not a voluntary waiver of the right to trial by jury; and (3) § 18.1–238 of the Code of Virginia violates the First, Fifth and Fourteenth Amendments to the United States Constitution in that it is vague and overbroad. These same issues were raised in the petition for a writ of habeas corpus in the Supreme Court of Virginia, which was denied and dismissed. Therefore petitioner has exhausted her available state remedies in compliance with the provisions of 28 U. S.C. § 2254.

This court originally dismissed the petition on the grounds of lack of jurisdiction. The Court of Appeals for the Fourth Circuit reversed (Mem.Dec. No. 73–1108), holding that the thirty-day suspended sentence and twenty-five dollar fine constituted sufficient "restraint" to put the petitioner "in custody" within the meaning of the habeas statutes (28 U.S.C. §§ 2241 and 2254). The case is now before this court on remand to consider the substantive grounds presented by the petition.

## TRIAL BY JURY

The Municipal Court of Roanoke is a court not of record, created by Title 16.1 of the Virginia Code, and as such, could not accord petitioner a trial by jury. Because the maximum penalty for violating § 18.1–238 is more than six months imprisonment, petitioner contends that she was entitled to a trial by jury under the Sixth and Fourteenth Amendments, citing Baldwin v. New York, 399 U.S. 66, 90 S.Ct. 1886, 26 L. Ed.2d 437 (1970).

Virginia, like many other states, has a two-tiered system of lower courts that allows for an "appeal" as a matter of right from a court not of record to a court in which a trial *de novo* may be heard by a jury. This right is embodied in Article I, § 8 of the Constitution of Virginia, which reads in part:

> Laws may be enacted providing for the trial of offenses not felonious by a court not of record without a jury, preserving the right of the accused to an appeal to and a trial by jury in some court of record having original criminal jurisdiction.

Petitioner therefore had a right to appeal to the Hustings Court of the City of Roanoke, and could have obtained a trial by jury before that court in a *de novo* proceeding. Instead, petitioner chose to proceed by way of a writ of habeas corpus to the Supreme Court of Virginia. Petitioner now contends that her right to a jury trial was denied, because she could not have it at the first instance, at the level of the court not of record.

■ With this proposition we cannot agree. The recent case of Colten v. Kentucky, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972) forecloses this argument. The facts in *Colten* are very similar to those in the case at hand.

---

or abuse anyone or use vulgar, profane, threatening or indecent language over any telephone in this State, he shall be guilty of a misdemeanor and may be prosecuted either in the county or city from which he called or in the county or city in which the call is received * * *

The appellant in *Colten* was tried and convicted of disorderly conduct in an "inferior" court in Kentucky and fined ten dollars. Kentucky has a two-tiered system for adjudicating certain criminal cases, under which a person charged with a misdemeanor may be tried first in an inferior court and, if dissatisfied with the outcome, may have a trial *de novo* in a court of general criminal jurisdiction, where he risks a greater punishment if convicted. Exercising his right to a trial *de novo*, the appellant in *Colten* was tried for disorderly conduct in the circuit court, convicted, and fined fifty dollars. The Supreme Court held that the two-tiered system[2] does not violate the Due Process Clause, as it imposes no penalty on those who seek a trial *de novo* after having been convicted in the inferior court, and it involves a completely fresh determination of guilt or innocence by the superior court. *Colten, supra,* at 112–119, 92 S.Ct. 1953. Granted, the Kentucky procedure entitled the appellant to a six-man jury at the initial trial level, *Colten,* at 113, 92 S.Ct. 1953, but the appellant had waived that right, and in view of the language of the Supreme Court, we do not view this a feature to be distinguished from the case at hand.

■ Petitioner contends that the holding in the case of Callan v. Wilson, 127 U.S. 540, 8 S.Ct. 1301, 32 L.Ed. 223 (1888), in which the Supreme Court held that the Sixth Amendment was not satisfied by the availability of a trial *de novo* to persons in the District of Columbia convicted in the first instance by courts unable to accord them trials by jury, should be binding upon the states. This court disagrees. Colten v. Kentucky, *supra,* clearly holds that the state two-tiered system is permissible, even if a conviction at the second level results in a greater sentence.

The procedure afforded by Virginia for the petitioner to obtain a trial by jury is fully within the requirements of

Baldwin v. New York, *supra.* Justice White has cited two justifications for the type of tribunals not of record that are utilized by Virginia. First, they provide speedier and less costly adjudications than may be possible in the criminal courts of general jurisdiction; and second, the defendant has an unconditional right to a new, unfettered trial in a superior court. Colten v. Kentucky, 407 U.S. at 114, 92 S.Ct. 1953.

The precursor of Baldwin v. New York, the case of Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) extended the Sixth Amendment right of trial by jury to trials in state courts, using the Due Process Clause of the Fourteenth Amendment. In his concurring opinion in that case, Mr. Justice Fortas stated very well why the two-tiered system is permissible:

> The Due Process Clause commands us to apply its great standard to state court proceedings to assure basic fairness. It does not command us rigidly and arbitrarily to impose the exact pattern of federal proceedings upon the 50 States. On the contrary, the Constitution's command, in my view, is that in our insistence upon state observance of due process, we should, so far as possible, allow the greatest latitude for state differences. It requires within the limits of the lofty basic standards that it prescribes for the States as well as the Federal Government, maximum opportunity for diversity and minimal imposition of uniformity of method and detail upon the States. Our Constitution sets up a federal union, not a monolith. 391 U.S. 213–214, 88 S.Ct. 1460.

[4] Since the holdings in *Duncan* and *Baldwin,* the jury trial standards imposed on the federal courts for a twelve-man jury, Thompson v. Utah, 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898) and unanimous verdict, Maxwell v. Dow, 176 U.S. 581, 20 S.Ct. 448, 44 L.Ed. 597 (1900), have been held inap-

2. The Court took note of Virginia's system. Colten v. Kentucky, at 112 n. 4, 114 n. 10, 115 nn. 12, 13, 92 S.Ct. 1953.

plicable to prosecutions in state courts by Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970) and Apocada v. Oregon, 406 U.S. 404, 92 S. Ct. 1628, 32 L.Ed.2d 184 (1972). This court likewise holds that Callan v. Wilson, *supra*, requiring a jury in the first instance, to be a federal jury standard and applicable only to the federal courts. The Supreme Court of Virginia has reached the same conclusion in Manns v. Commonwealth, 213 Va. 322, 191 S.E.2d 810 (1972), holding that the appeal of right and the trial *de novo* procedure employed by Virginia fully complied with the guarantee of the Sixth Amendment.

## RIGHT TO APPEAL

■ Petitioner next contends that the power of the Virginia court of record to impose a more severe sentence, had she appealed, had a chilling effect on her right to appeal, and that her failure to appeal was consequently a result of fear, and not voluntary. This court finds no merit in this contention. As respondent correctly notes, there is an element of risk involved at all stages of the criminal justice process, and all that the Constitution prohibits is an unreasonable or unconstitutional injection of fear which would improperly influence her decision. Petitioner concedes that Colten v. Kentucky, *supra*, has established the proposition that in a trial *de novo*, the second court may impose a greater penalty than the first. As long as petitioner is entitled to a fresh determination of her guilt or innocence by the superior court, which is not the same court which originally tried the case, an enhanced sentence on reconviction is not prohibited. *Colten*, 407 U.S. at 119, 92 S.Ct. 1953.

[6] This court is of the opinion that the choice put to petitioner did not place an unconstitutional condition on her exercise of the right to a trial by jury. The Constitution does not dictate that a defendant and his attorney are never to be put to hard decisions regarding which trial tactics should be employed.

*Cf.* North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

## CONSTITUTIONALITY

■ Petitioner lastly contends that § 18.1–238 of the Virginia Code, as amended, under which she was convicted, is void for vagueness and overbreadth. If this position is well taken, then petitioner's conviction is not merely erroneous, but is illegal and void. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L. Ed.2d 837 (1963). A federal habeas corpus proceeding is a proper method to test the contention that § 18.1–238 is unconstitutional, even though that argument was rejected by the state's highest court. *Cf.* McLaurin v. Burnley, 279 F. Supp. 220 (N.D.Miss.1967), aff'd, 401 F.2d 773 (5th Cir. 1968) (per curiam), cert. denied, 399 U.S. 928, 90 S.Ct. 2228, 26 L.Ed.2d 795 (1970).

This court is hesitant to address this issue for two reasons. The first is that we lack any record of how this statute was applied in the instant case, since the proceedings below were before a court not of record. Secondly, the Supreme Court of Virginia has not authoritatively dealt with the statute. The only instance that brought the statute before that court was in Harmon v. Commonwealth, 209 Va. 574, 166 S.E.2d 232 (1969), where, *inter alia*, it held that the evidence of repeated obscene telephone calls was sufficient to support a conviction under § 18.1–238, but it did not otherwise construe its application.

■ Nevertheless, since petitioner argues that the statute is invalid on its face, we must address this issue. *Cf.* Gooding v. Wilson, 405 U.S. 518, 92 S. Ct. 1103, 31 L.Ed.2d 408 (1971); Dombroski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). This court does not question petitioner's standing to raise the issue. *Cf.* Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). But as the Supreme Court noted in Younger v. Harris, 401 U.S. 37, 47 n. 4, 91 S.Ct. 746, 752 n. 4, 27 L.Ed.2d 669 (1971), even though it

allowed attacks on overly broad or vague statutes in the absence of any showing that the defendant's conduct could not be regulated by some properly drawn statute

. . . in each of these cases the statute was not merely vague or overly broad 'on its face'; the statute was held to be vague or overly broad as construed and *applied* to a particular defendant in a particular case. (Emphasis in original)

This court lacks any record of how the statute in the instant case was applied. We are thus left to speculate upon the possible implications of bare statutory language.

■ Petitioner is particularly insistent that the words "vulgar" and "threatening" are insufficiently explicit to inform men of common intelligence what conduct on their part will render them liable for the penalties of § 18.1–238, and are so vague as to make them guess at their meaning and differ as to their application. Since the legislative act challenged here is allegedly in violation of a First Amendment guarantee, the presumption is against the validity of the statute. United States v. C. I. O., 335 U.S. 106, 140, 68 S.Ct. 1349, 92 L. Ed. 1849 (1948) (J. Rutledge, concurring).

Nevertheless, this court is unconvinced that the statute is neither impermissibly vague or overbroad. We perceive no violation of "[t]he underlying principle . . . that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954); *cf.* Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926).

All fifty states now have variously-worded statutes of a nature similar to § 18.1–238 of the Virginia Code.[3] 1968 U.S.Code Congressional and Administrative News, at 1917. The statutes of some of those states previously have been interpreted by the state courts (cases *infra*). An argument similar to that urged by petitioner was made in the case of State v. Hertzog, 241 La. 783, 131 So.2d 788 (1961). The defendant in *Hertzog* was charged with violating the Louisiana statute which, in part, is cited at 788:

No person shall engage in or institute a local telephone call, conversation or conference of an anonymous nature and therein use obscene, profane, vulgar, lewd, lascivious or indecent language, suggestions or proposals of an obscene nature and threats of any kind whatsoever.

The defendant contended that because of the indefiniteness of the word "vulgar" the statute on which the charge against him was based was unconstitutional insofar as it denounced the use of "vulgar" language. The court used the rule *noscitur a sociis* in deciding that the word "vulgar" should be considered in the context of the other words with which it is used, and be colored by them. That court determined that "vulgar" in context was defined by the accompanying adjectives, and its presence did not render the statute unconstitutional.[4] In Black's Law Dictionary 1209 (rev. 4th Ed. 1968) the rule of *noscitur a sociis* is declared to be as follows:

It is known from its associates. * * * The meaning of a word is or may be known from the accompanying words. * * * The doctrine means

---

3. The statutes of the other states in this judicial circuit are virtually synonymous in their language prohibiting the use of certain forms of language over the telephone (all but Maryland prohibit "profane" and "vulgar" language; Maryland prohibits "filthy" and "obscene" language). *See* Maryland Code, Art. 27, § 555A (1971 Rep.Vol.); N.

Car.Gen.Stat., Ch. 14, 196.1 (1969 Rep. Vol.); Code of Laws of S.Car., § 16–552.1 (1967 rev.); W.Va.Code, § 61–8–16 (1967 rev.).

4. The Louisiana statute was recently re-examined and upheld in State v. Edwards, 261 La. 1014, 261 So. 649 (1972).

that general and specific words are associated with and take color from each other, restricting general words to sense analogous to less general. Dunham v. State, 140 Fla. 754, 192 So. 324, 325.

*Cf.* United States v. Lewis, 110 F.2d 460, 462 (7th Cir. 1940), cert. denied, 310 U.S. 634, 60 S.Ct. 1077, 84 L.Ed. 1404 (1940).

 In applying this general principle, this court is of the opinion that the word "vulgar" when used in connection with the other words in the statute capable of analogous meaning is not so insufficiently explicit to inform one of common intelligence of its meaning. We are of the same opinion as to the use of the word "threatening," which was added to § 18.1–238 by amendment in 1964 (Chapter 577). The Texas Court of Criminal Appeals has upheld the constitutionality of the Texas statute which prohibited the use of "threatening" language.[5]

As the Supreme Court has recently noted in a First Amendment issue, "the root of the vagueness doctrine is a rough idea of fairness." Colten v. Kentucky, *supra*, 407 U.S. at 110, 92 S.Ct. at 1957 and

It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited. 407 U.S. at 110, 92 S.Ct. at 1957.

 Impossible standards of specificity are not required. Jordan v. De-George, 341 U.S. 223, 231, 71 S.Ct. 703, 95 L.Ed. 886 (1951). The test is whether the language conveys sufficiently definite warnings as to the proscribed conduct when measured by common under-standing and practices. 341 U.S. at 231, 71 S.Ct. 703.

 Petitioner also contends that the statute is overbroad and repugnant to the concept of free speech in that it prohibits certain forms of language (speech) over the telephone, rather than improper uses of the telephone (conduct), and forbids the use of language, which, it is contended, is neither criminal in and of itself, nor part of a criminal act. In other words, petitioner asserts that the means used by the state to prohibit obscene and threatening telephone calls, as we perceive the purpose of § 18.1–238, is overinclusive in its reach, and therefore illegal. With this contention we cannot agree. It cannot be disputed that the state has a legitimate interest in prohibiting obscene and threatening calls, most of which by their very nature are anonymous and unsolicited. Prohibiting certain forms of speech, as the Commonwealth has, is not only a rational means of enforcing the objective of the statute, it is probably the only means by which it can be accomplished.

"[T]he right of free speech is not absolute at all times and under all circumstances." Chaplinsky v. New Hampshire, 315 U.S. 568, 571, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942). As the court said in *Chaplinsky,* at 571–572, 62 S.Ct. at 769:

There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These included the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of

---

5. The Texas statute reads in part: Whoever * * * uses any telephone in any manner with intent to harass, annoy, torment, abuse, threaten or intimidate another shall be guilty of a misdemeanor. Alobaidi v. State, 433 S.W.2d 440, 441 (Ct.Crim.App.Tex.1968), cert denied, 393 U. S. 943, 89 S.Ct. 313, 21 L.Ed.2d 281 (1968).

such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.

In balance, this court is of the opinion that the public interest in being safeguarded against the abuses to which it may be subjected to by indiscriminate usage of the telephone clearly outweighs whatever marginal interest an individual would have in utilizing the forms of speech proscribed by § 18.1–238. We are unable to say that the limited scope of the statute as thus construed contravenes the constitutional right of free expression. It is a statute rather narrowly drawn and limited to define and punish specific conduct lying within the domain of state power. This conclusion necessarily disposes of petitioner's contention that the statute is so vague and indefinite as to render a conviction thereunder a violation of due process.

For the foregoing reasons, it is adjudged and ordered that the petition for a writ of habeas corpus be dismissed and the writ denied.

A certified copy of this opinion and judgment is directed to be sent to the petitioner and to the respondent.