Commonwealth *v.* Williams, Appellant.

Argued March 28, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*Stephen R. Signore, Jr.*, Public Defender, for appellant.

*Stewart J. Greenleaf*, with him *J. David Bean*, Assistant District Attorneys, *William T. Nicholas*, First Assistant District Attorney, and *Milton O. Moss*, District Attorney, for Commonwealth, appellee.

OPINION BY SPAETH, J., June 21, 1974:

Appellant was convicted by a jury of operating a motor vehicle while under the influence of alcohol. The Vehicle Code, Act of April 29, 1959, P. L. 58, §1037, 75 P.S. §1037. During the trial, appellant's counsel asked the court to suppress the results of a blood alcohol test. The court refused to do so. We reverse.

Appellant was involved in an automobile accident on the afternoon of December 26, 1970. Shortly afterwards, Officer Robert A. Christopher of the Plymouth Township police force arrived on the scene in response to a radio call; the officer did not see the accident.[1] Finding appellant slumped behind the wheel of his car, the officer forced open a door. He was immediately struck by the smell of alcohol, and saw blood running down appellant's chin. He helped appellant into an ambulance, which took appellant to the Montgomery Hospital. After the ambulance had driven away, the

---

[1] What follows is a summary of the officer's testimony on direct and cross-examination and upon recall.

officer found a nearly empty pint bottle of whiskey on the floor of appellant's car in front of the driver's seat.

When the officer had concluded his investigation at the scene, he proceeded to the hospital and went into the cubicle where appellant was being treated. Apparently appellant had received stitches in his lip before the officer arrived; a doctor also attended to appellant's lip while the officer was present. The odor of alcohol was still very strong on appellant's breath, and he appeared to be in a "stupor." His speech was slurred and incoherent. In response to questioning about the accident, appellant "started to tell [Officer Christopher] about his boxing career, that he fought and beat Marciano, and also stated that he was going to show the officer how good he could box when he gets off the table."[2] It is not clear what the officer's response to appellant's behavior was. During direct examination the officer stated that he placed appellant under arrest for drunk driving. On cross-examination, however, he denied arresting appellant, or charging him with anything while he was in the hospital, maintaining that appellant was not arrested until January 15, 1971, after he had failed to appear at a hearing although served with a summons to appear.[3] In any event, the officer evidently did give appellant the *Miranda* warnings, and then stepped outside the cubicle and asked a doctor to take a sample of appellant's blood. The officer did not remember the name of this doctor but assumed that he was the same one who had been treating appellant. The officer told appellant that a sample of his blood was going to be taken because he believed ap-

---

[2] Appellant's counsel objected to this testimony on the ground that the statements were made before *Miranda* warnings were given. No pretrial motion to suppress them had been filed, and the court overruled the objection.

[3] The court below states that in its opinion appellant was placed under arrest at the hospital.

pellant to be under the influence of alcohol. The doctor took the sample and turned it over to the officer who in turn took it to a laboratory for analysis. Appellant was permitted to leave the hospital with a friend.

Following the completion of Officer Christopher's testimony, appellant's counsel made an oral motion to suppress the results of the blood test. Counsel argued that inasmuch as appellant was not arrested until some days after the blood was taken, the taking was not incident to a lawful arrest; there was, therefore, no constitutional basis for the seizure of appellant's blood and the results of the blood test must be suppressed. The Assistant District Attorney argued that appellant was arrested just before his blood was taken and that the seizure was lawful because incident to the arrest. He further argued that since no pretrial motion to suppress had been made, appellant could not raise the issue of the legality of the seizure of blood. The Court stated that "[appellant's] position would probably be well taken were there application to suppress here under the rules of Criminal Procedure but no applications have been filed of any sort." Appellant's counsel responded by saying: "The basis for our making these applications at this time is that there has been no indication on the record for the purpose of the withdrawal of blood, and that our position is, is that [appellant] was certainly not aware as to why these were taken other than for treatment." The court was unpersuaded, and admitted the results of the blood test into evidence.[4]

---

[4] The results indicated that the amount of alcohol by weight in appellant's blood was .265. According to subsection (c)(3) of the "implied consent law," The Vehicle Code, *supra* §624.1, added Act of July 28, 1961, P. L. 918, §1, as amended, Act of July 31, 1968, P. L. 758, No. 237, §1, Act of December 22, 1969, P. L. 392, §1, 75 P.S. §624.1(c)(3), where a breath, blood, or urine test yields results

By way of defense, appellant produced several witnesses and testified in his own behalf. One of the appellant's witnesses was the ambulance attendant who rode with appellant to the hospital. He testified that during the trip, appellant appeared to lose consciousness for a minute or two, and that he used an aspirator to clear some of the blood from appellant's mouth, to prevent it from running into his throat, and also administered oxygen. Another of appellant's witnesses was the medical records librarian of Montgomery Hospital. She testified from appellant's medical records. As a result of the accident, appellant suffered a laceration of the lower lip for which he received ten sutures and a shot of tetanus. An X-ray revealed "a fracture of the left posterior lateral 9th rib." Appellant returned to the hospital later on December 26th (the day of the accident) because of "pain" and was given "Darvon." On January 4, 1971, the sutures were removed. Nowhere on appellant's medical chart is it indicated that blood was taken. Appellant in the course of his testimony said that he was bandaged for the injury to his ribs. He did not recall that he received a tetanus shot or that blood had been taken from him. Also, he denied that he had ever boxed.

Following appellant's conviction, his counsel on motions for new trial and in arrest of judgment renewed his objection that the result of the blood test should have been suppressed. In an opinion in support of the denial of these motions the court below says: "Counsel for the defendant entered his appearance in this prosecution on October 5, 1971, and in the four and one-half (4½) months that elapsed until trial, filed no application of any kind on the defendant's behalf. Accordingly, there was a waiver of the right to challenge and sup-

---

of .10 or higher "it shall be presumed that the defendant was under the influence of intoxicating liquor."

press the blood sample . . . . Absolutely no equity was addressed to the trial judge or presented for his consideration which could conceivably justify invocation of 'the interests of justice' exceptions to [Pa. R. Crim. P. 323(b)]."

Pa. R. Crim. P. 323(b) states: "(b) Unless the opportunity did not previously exist, or the interests of justice otherwise require, [an] application [to suppress evidence because unconstitutionally obtained] shall be made . . . not later than ten days before the beginning of the trial session . . . . If timely application is not made hereunder, the issue of the admissibility of such evidence shall be deemed to be waived." Whether "the opportunity did not previously exist, or the interests of justice otherwise require . . ." is a matter for the discretion of the trial judge. *Commonwealth v. Pinno,* 433 Pa. 1, 248 A. 2d 26 (1968).

Based on the case law as it existed at the time of trial, appellant made a substantial claim in his oral motion. The trial judge recognized this. If appellant was not arrested until January 15, 1971, as Officer Christopher stated on cross-examination, appellant's case is nearly identical to *Commonwealth v. Murray,* 441 Pa. 22, 271 A. 2d 500 (1970). There, our Supreme Court suppressed the results of a blood test taken from a defendant while he was undergoing treatment for injuries sustained in an automobile accident. Under *Schmerber v. California,* 384 U.S. 757 (1966), the seizure of the defendant's blood would have been constitutional if taken incident to a lawful arrest, but since the defendant was not placed under arrest until thirteen days after the accident, the results of the blood test were suppressed.

It should also be noted that appellant would have a good argument for suppression even if he was arrested while at the hospital. In *Commonwealth v. Reeves,* 223 Pa. Superior Ct. 51, 297 A. 2d 142 (1972), this court

suppressed the results of a blood test where the defendant had been arrested at a hospital for misdemeanors connected with the automobile accident for which he was receiving treatment. "A police officer may only make a warrantless arrest for a misdemeanor 'where he has probable cause to believe that a misdemeanor is being committed in his presence.' Commonwealth v. Vassiljev, 218 Pa. Superior Ct. 215, 219-220, 275 A. 2d 852, 854 (1971)." *Id.* at 52-53, 297 A. 2d at 143. Since the defendant did not commit in the officer's presence the misdemeanors with which he was charged, he was illegally arrested and the result of the blood test was suppressed as administered incident to an unlawful arrest.[5]

The law in this area has been changed somewhat by *Commonwealth v. Quarles,* 229 Pa. Superior Ct. 363, 324 A. 2d 452 (1974), but appellant still has a suppression claim that should have been heard. Under subsection (a) of the implied consent law, *supra,* Officer Christopher could have asked appellant to submit to a chemical test of his breath without arresting him provided there were reasonable grounds to believe that appellant had been driving while intoxicated. Officer Christopher would have been justified in requesting that a sample of appellant's blood be taken in lieu of a breath test if the additional considerations of subsection (f) of the law were met. Subsection (f) states: "If for any reason a person is physically unable to supply enough breath to complete a chemical test a physician or a technician acting under his direction may withdraw blood for the purpose of determining the alcoholic content therein. Consent is hereby given by such persons. The chemical analysis of the blood taken under these circumstances shall be admissible in evi-

[5] *See Commonwealth v. Quarles,* 229 Pa. Superior Ct. 363, 370 n.2, 324 A. 2d 452, 456-457 n.2 (1974).

dence." While it seems likely that Officer Christopher had reasonable grounds for requesting the blood sample, it does not appear that appellant because of the injuries to his lip would not have been able to take a breathalyzer test. Whether this was the case could have been determined at a hearing. In addition, the record does not establish the fact that the person who drew appellant's blood was qualified under the law to do so. The implied consent law requires that blood be drawn by "a physician or a technician acting under his direction." Officer Christopher assumed that the person whom he asked to draw appellant's blood was the doctor who had treated appellant, but he could not recall the person's name. Without the person's name, there is no way to verify the officer's assumption or even the fact that the person was a physician.

There is nothing to suggest that in failing to raise the question of suppression earlier, counsel for appellant is acting either in bad faith or from a desire to delay the proceedings; the very substantiality of appellant's claim suggests to the contrary. Counsel's explanation for his failure to file a pretrial motion to suppress is supported by the testimony of appellant, who was apparently physically hurt and mentally confused at the time the blood was taken. More important, the possibility that appellant did not understand why blood was being taken, or forgot that it was taken, is supported by the testimony of the officer that appellant was in a "stupor" and made bizarre statements at the hospital, and also by the testimony of the ambulance driver and medical records librarian as to the extent of appellant's injuries. It should particularly be noted that the librarian testified that appellant's medical chart did not give any indication that blood had been taken. Thus there was no way appellant's counsel could learn from the medical records that blood had been taken for an alcohol test. If appellant did not

know blood had been taken, or had forgotten, his counsel in all likelihood would not learn of the test until trial. That is what counsel told the court had happened. For the court to say that there was "[a]bsolutely no equity" in support of counsel's failure to file a pretrial motion to suppress the result of the blood test was contrary to the record.

The court seemed particularly disturbed that appellant's counsel had filed no pretrial motions whatsoever although counsel objected to the introduction of other evidence on the ground that it had been obtained unconstitutionally. The objection made to this other evidence was not as strong as that which was made to the introduction of the blood test. (*See* footnote 2, *supra.*) It is in any case irrelevant that a pretrial motion could have been filed as to other evidence, for even if such a motion had been filed, it would not have mentioned the blood test, since counsel evidently did not know about the test.

Rule 323(b) is in the disjunctive: an oral in-court motion should be heard if "the opportunity [to file a pretrial written motion] did not previously exist, or the interests of justice otherwise require . . . ." *Id.* In the present case, both requirements were met. As a practical matter, because of counsel's ignorance of the fact that there had been a blood test, the opportunity to move to suppress the result of the test did not exist; and the merits of counsel's oral motion were so apparent that justice required that it be heard. Given these circumstances it was an abuse of discretion to refuse to hear the motion.

The judgment of sentence is reversed and a new trial awarded.

WRIGHT, P. J., and SPAULDING, J., did not participate in the decision of this case.