366 A.2d 895

**COMMONWEALTH of Pennsylvania**

v.

**Love HARMON, Appellee.**

Supreme Court of Pennsylvania.

Argued July 1, 1975.

Decided Nov. 24, 1976.

Rehearing Denied Dec. 14, 1976.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Maxine Stotland, Asst. Dist. Atty., Philadelphia, for appellant.

John W. Packel, Asst. Defender, Chief, Appeals Div., Defender Assn. of Philadelphia, Douglas Riblet, Philadelphia, for appellee.

492

OPINION OF THE COURT

NIX, Justice.

The singular question presented in this appeal is whether the Constitution of this Commonwealth mandates that an accused who has been tried and convicted in the Municipal Court and who is entitled to a trial de novo in the Court of Common Pleas is also entitled to a relitigation of a previously determined pre-trial motion to suppress evidence. Relying upon its decision in *Commonwealth v. White*, 228 Pa.Super. 23, 324 A.2d 469 (1974), a majority of the members of the Superior Court ruled that General Court Regulation 72–7, promulgated by the President Judges of the Court of Common Pleas and the Municipal Court, both of Philadelphia County, was unconstitutional and reversed the judgment of sentence.[1] *Commonwealth v. Harmon*, 229 Pa.Super. 326, 324 A.2d 473 (1974). We granted allocatur and for the reasons that follow we now reverse the order of the Superior Court.[2]

On May 23, 1972, Love Harmon, appellee, was tried and convicted in the Municipal Court for the possession of narcotic drugs. Prior to the trial, appellee had unsuccessfully contested the legality of his arrest by way of a pre-trial motion to suppress prejudicial evidence obtained during the asserted illegal detention. After conviction the trial judge sentenced appellee to a term of imprisonment of six to twelve months. Thereupon, pursuant to the Act of October 17, 1969, P.L. 259, § 18, as amended, Act of July 14, 1971, P.L. 224, No. 45, § 1, 17 P.S. § 711.18 and the Pennsylvania Constitution, Sched-

1. A dissenting opinion was filed by Judge Jacobs.
2. This appeal was argued before this Court on July 1, 1975. Subsequently, it was reassigned to this writer on July 8, 1976.

ule Art. V, § 16(r)(iii), appellee appealed his conviction as a matter of right to the Court of Common Pleas and demanded a trial de novo. On September 8, 1972, when trial was to begin, appellee requested a relitigation of the suppression motion which had previously been denied in the Municipal Court. Acting in accordance with General Court Regulation 72–7, the trial judge refused to hold a second evidentiary hearing on the issue. Appellee was subsequently tried and again convicted of possession of narcotics and after the disposition of post-trial motions appellee was sentenced to a term of imprisonment of not less than six nor more than twelve months. As has been stated, on appeal to the Superior Court the judgment of sentence was reversed and a new trial awarded. The ruling of the Superior Court was predicated on the belief that General Court Regulation 72–7 was in conflict with the Constitution and therefore invalid.

The Schedule to Article V of the Pennsylvania Constitution, Section 16(r)(iii), after conferring jurisdiction in certain criminal cases in the Municipal Court, provided:

"In these cases, the defendant shall have no right of trial by jury in that court, but he shall have the right of appeal from trial de novo including the right to trial by jury to the trial division of the court of common pleas." [3]

On February 29, 1972, the President Judges of the Court of Common Pleas of Philadelphia County and the Municipal Court of Philadelphia issued a joint regulation which was designated as General Court Regulation 72–7 and provided:

"Motions to suppress shall be heard on the same day and immediately prior to the Municipal Court trial.

---

**3.** The Legislature, under the authority vested in it by the Schedule to the judiciary Article, increased the jurisdiction conferred under this sub-section but retained the exact language with reference to the right of a trial de novo upon conviction in the Municipal Court. Act of July 14, 1971, P.L. 224, No. 45, § 1, 17 P.S. § 711.18 (Supp.1976–77).

The judge hearing the motion to suppress shall hear same as a Common Pleas Court Judge. In the event such motion is denied and defendant convicted on appeal to the Common Pleas Court, the motion may not be reinstated as part of the appeal."

The question thus posed is whether the constitutional grant of an absolute "right of appeal for trial de novo" was intended to embrace the right to relitigate pre-trial motions that have been decided initially by a judge of the Municipal Court. To determine whether, in fact, there is a conflict between General Court Regulation 72–7 and the constitutional provision, we are called upon to determine the intention of the people in their adoption of this provision. In its analysis of the intended meaning of the phrase "trial de novo", the majority of the Superior Court focused its attention upon the words "de novo". See *Commonwealth v. White, supra,* 228 Pa.Super. at 26, 324 A.2d at 471. We believe that the critical word in the phrase is "trial". While we quite agree that the words "de novo" require a new consideration of the subject, this does not answer the question as to the scope of the subject, i. e., the trial.

■■ In this jurisdiction it is unquestioned that motions to suppress are applications that are disposed of prior to the commencement of trial. Pennsylvania Rule of Criminal Procedure 323(b).[4] Pre-trial proceedings by definition are distinguishable from the actual trial.[5] A constitution is not to receive a technical or strained construction, but rather the words should be interpreted in

4. Rule 323(b) in part provides:
   "Unless the opportunity did not previously exist, . . . ., such application *shall be made . . . not later than ten days before the beginning of the trial . . .* " (Emphasis added).

5. Our Rules of Criminal Procedure have reinforced the distinction between pre-trial matters which are listed under the heading "Business of the Court" (see Chapter 300 of the Rules) and trial matters which enjoy a separate chapter under our rules (see Chapter 1100).

their popular, natural and ordinary meaning. We should also consider the circumstances attending its formation and the construction probably placed upon it by the people. *Commonwealth ex rel. Tate v. Bell*, 145 Pa. 374, 22 A. 641 (1891).[6] Under the accepted use of the word "trial" as used in this Commonwealth, we are satisfied that it was not intended to encompass recognized pre-trial proceedings.

The definition of "trial" which we now interpret as not including pre-trial motions is also consistent with this Court's longstanding use of the term. In *Commonwealth v. Sites*, 427 Pa. 486, 235 A.2d 387 (1967), we specifically rejected an interpretation of the word "trial" that would include a hearing upon a motion to suppress evidence:

> The decision in *Miranda* was announced on June 13, 1966, and in *Johnson v. New Jersey*, 384 U.S. 719. [86 S.Ct. 1772, 16 L.Ed.2d 882] (1966), was held to apply to all "trials" commencing on and after that date. Despite the fact that the instant trial began on September 19, 1966, the Commonwealth urges that *Miranda* does not control because the "trial" on the issue of the admissibility of the evidence involved began April 26, 1966, the date of the hearing on the motion to suppress. Again, we cannot agree. This would give the word "trial" a new meaning and in our opinion would be contrary to what the United States Supreme Court intended.

*Id.* at 493, 235 A.2d at 391.

The majority of the Superior Court in reaching its conclusion was obviously influenced by the fact that the evidence challenged in a pre-trial proceeding "is often the

6. ". . . where the language used is untechnical, it is to be construed as the people who voted for [it] probably understood it." *O'Connor v. Armstrong*, 299 Pa. 390, 396, 149 A. 655, 657 (1930). *See also Commonwealth ex rel. Reinhardt v. Randall*, 356 Pa. 302, 51 A.2d 751 (1947); *Busser v. Snyder*, 282 Pa. 440, 128 A. 80 (1925).

crucial if not the only basis for conviction." While it is true that the evidence that was the subject of the pretrial proceeding might have a significant impact upon the ultimate verdict, this fact alone cannot justify a distortion of the clear language of the Constitution. There are many steps in the process between arrest and trial which may have similar impact upon the ultimate result (e. g., custodial interrogation, post-arrest identifications, etc.) which are obviously not part of the trial.

If there remains any question of the intention sought to be conveyed by the use of the word "trial", a consideration of the objectives sought to be accomplished by the creation of the Philadelphia Municipal Court must satisfy all remaining doubt. The unquestioned purpose of the establishment of a Municipal Court in Philadelphia was to relieve the congestion and backlog that was plaguing the existing system within the County.[7] In an effort to expedite the disposition of cases in the criminal area this new court was given jurisdiction over the less serious charges and permitted to dispose of them without the re-

7. The magistrate system we wish to abolish and replace with a municipal court extends the jurisdiction of this court to cover civil cases up to $500 and criminal cases up to two years' imprisonment. For that you men trained in the law; that is common sense. There are many distinguished people who like myself are here with a few degrees behind their names who could not administer justice because we are not trained in that particular science or that particular art. They must be trained in the law.

Why do we want to this? Just to get rid of the magistrates and appease people? No, not at all. As I mentioned in our trial division, in our common pleas court, you wait five and a half to six years to have a case tried. There is a backlog of cases of approximately 27,000 people waiting to have their cases adjudicated. In the criminal division it is somewhere around three and a half to four years on criminal cases to be tried. There are many people in jail, who do not have the funds to get out, waiting a year and a half or longer for their case to come up in court. This is not good government; it is not good management; and it is not the way a judicial system should operate if we have any concern about good government. Debates of the Pennsylvania Constitutional Convention of 1967–1968, Vol. 1, p. 328 (January 10, 1968).

quirement of providing trials by jury. However, to avoid conflict with the constitutional right of trial by jury, an unfettered right to a trial with jury was provided for those litigants who were not satisfied with the disposition of the Municipal Court. Thus, the benefit to be derived from the new system, aside from the additional judicial manpower it provided,[8] was dependent upon both the new tribunal's capacity to expedite dispositions and the percentage of litigants willing to accept the decisions of that tribunal as final.[9] It is obvious that if the Municipal Court proceeding becomes a mere dress rehearsal for further proceedings in the Common Pleas Courts, then, the new system has defeated the very purpose for which it was conceived. It would be violative of fundamental rules of construction to construe a provision in such a manner that it defeats the very purpose it was designed to accomplish.[10]

Although a second proceeding in which a trial by jury may be had upon request is necessarily mandated by Article I, Section 9 of our Constitution there is no such compulsion that would require the relitigation of pre-trial motions. To interpret the provision as requiring an automatic relitigation of the pre-trial suppression decision serves no useful purpose and would unnecessarily further encumber a procedure which was intended to expedite and not delay the disposition of the case load before our courts.

8. Sheer additional manpower was not the primary concern since this could have been accomplished by simply increasing the numbers of judges on Common Pleas Court.

9. Based upon the statistics provided to this Court by the Court of Common Pleas and Municipal Court of Philadelphia for the calendar year 1973, the Philadelphia Municipal Court disposed of 23,108 cases through guilty pleas, verdicts, or the various pre-indictment probation programs. Of this number, 5,610 were guilty verdicts from which only 1,454 appeals were taken or roughly six per cent of the total cases disposed.

10. "The Constitution is entitled, like other instruments, to a construction, as nearly as may be, in accordance with the intent of its makers." *Moers v. City of Reading*, 21 Pa. 188, 200 (1853).

Moreover, appellee has failed to establish any deprivation of an accused's substantive rights that would result under General Court Regulation 72–7. Both Municipal and Common Pleas Courts are bound by the same law and apply the same standards in ruling upon the merits of the suppression motion.[11] The judges of both courts are trained in the law and their decisions are subject to review on post-trial motions and upon appeal to the appellate tribunals of this Commonwealth. Our interpretation of the rule places the accused, who first appeared in the Municipal Court, on the same plane as the individual whose case was initiated in the Court of Common Pleas. In both situations the pre-trial decision cannot be relitigated during the Common Pleas Court trial,[12] and in each instance the accused must demonstrate in post-trial and/or appellate proceedings that error below occurred. We are therefore satisfied that General Court Regulation 72–7 does not transgress any constitutional provision and, therefore, is valid.

Accordingly, we reverse the order of the Superior Court and remand the matter to that tribunal for consideration and disposition of the remaining issues which were presented on appeal before that Court and properly preserved for review.

MANDERINO, J., filed a dissenting opinion in which ROBERTS, J., joined.

MANDERINO, Justice (dissenting).

I dissent. The majority concludes that the nature of the "pretrial" suppression hearing is such that it should

11. Under Rule 323, even if the suppression motion has been heard in Common Pleas Court, the court's ruling is "final, conclusive and binding" at trial and may not be relitigated except upon a showing of evidence which was, at the time of the hearing, unavailable. *See, Commonwealth v. DeMichel*, 442 Pa. 553, 277 A.2d 159 (1971).

12. See the exception noted in Note 11 *infra*.

not be considered a part of the "trial," and that therefore the *de novo* "trial" should be limited to a re-litigation of guilt or innocence only. The suppression hearing itself, however, is nothing more than a determination of the admissibility of *trial* evidence, and is held outside the presence of the jury pursuant to *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The purpose for holding a hearing on the admissibility of certain evidence prior to trial rather than during the course of the jury proceedings is to prevent the uneconomical use of the jury's time, and as a matter of convenience to the court and to the litigants. The hearing, however, need not necessarily be held "pre-trial." Cf. *Swenson v. Stidham*, 409 U.S. 224, 93 S.Ct. 359, 34 L.Ed.2d 431 (1972). Questions as to the admissibility of evidence have traditionally been, and remain, an integral part of a trial. The *timing* of admissibility hearings as to certain evidence does not make them any less a part of the trial.

In a different context, the federal courts have been called upon to define the parameters of a "trial" as that word is used in the Sixth Amendment's guarantee of a "public trial." In *United States v. Kobli*, 172 F.2d 919 (3d Cir. 1949) the selection of a jury was held to be part of a public "trial." In *United States ex rel. Bennett v. Rundle*, 419 F.2d 599 (3d Cir. 1969), the court recognized that "[a] *Jackson v. Denno* hearing has more of the characteristics of a testimonial hearing, which is the essence of a trial proceeding, than does the selection of a jury . . .", and held that for the purposes of the Sixth Amendment's requirement that an accused be afforded a *"public trial,"* the "pretrial" suppression hearing was an integral part of the "trial" and must be open to the public also. This requirement was recognized by our Court in *Commonwealth v. Bennett*, 445 Pa. 8, 282 A.2d 276 (1971). *See also United States v. Clark*, 475 F.2d 240, 247 (2d Cir. 1973). ("In many criminal prosecutions the disposition of the motion to suppress is as im-

portant as the trial itself, since granting of the motion may require entry of a judgment of acquittal for lack of other proof sufficient to convict.")

A "pretrial" hearing on the admissibility of the evidence which the prosecution seeks to present to the fact finder is as much a part of the "trial" as a hearing on the admissibility of such evidence would be had it taken place subsequent to the swearing of the jury or to the calling of the first witness.

The majority opinion overlooks the effect that Rule 323(b) of our Rules of Criminal Procedure will have upon an accused's right to re-litigate questions concerning the suppression of evidence. Rule 323(b) requires that applications to suppress evidence be submitted to the court not later than ten days prior to the beginning of the trial session or the day the case is listed for trial, *except* in the case where "the opportunity did not previously exist, or the interests of justice otherwise require." In these situations, Rule 323(b) permits the trial court to hold a hearing on the suppression motion *during trial.* See *Commonwealth v. Williams*, 229 Pa.Super. 390, 323 A.2d 862 (1974). Surely an accused on trial in the Municipal Court would have the same right to present a motion to suppress during trial in cases where "the opportunity did not previously exist, or the interests of justice otherwise require." Under the majority's reasoning, an application to suppress in the Municipal Court which is not considered "pre-trial," but which is considered under the exception during "trial" would, of necessity, have to be re-litigated prior to the trial de novo in the Court of Common Pleas. To allow re-litigation of the motion brought *during "trial"* in the Municipal Court pursuant to the exception, while not allowing the re-litigation of the motion brought "pre-trial" would be a denial of equal protection, and furthermore just doesn't make sense.

In *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), the United States Supreme Court

pointed out that "two-tier" judicial systems are justified on at least two bases. The one being "to provide speedier and less costly adjudications than may be possible in the criminal courts of general jurisdiction where the *full range of constitutional guarantees is available* [and] second, if the defendant is not satisfied with the results of his first trial he has the unconditional right to a new trial in a superior court, *unprejudiced by the proceedings or the outcome in the inferior courts.*" *Id.* at 114, 92 S. Ct. at 1959, 32 L.Ed.2d at 592. (Emphasis added.) The *Colten* court stated that upon conviction in the first tier of the two-tier criminal justice system a defendant would have the unfettered option of seeking a new trial "with the slate wiped clean" if he so desired. *Id.* at 119, 92 S. Ct. at 1961, 32 L.Ed.2d at 594. By refusing to allow relitigation of the pre-trial motion to suppress, the majority forces the defendant, against whom the Municipal Court judge has admitted evidence challenged at a pretrial suppression hearing, to proceed to the de novo trial carrying the burden of the adverse determination of admissibility of evidence. In so doing, he is denied the "full range of constitutional guarantees" normally available in a jury trial. Such a defendant is also prejudiced by the prior proceedings because he or she is not allowed to proceed to the de novo trial "with the slate wiped clean."

The majority contends that Court Regulation 72–7 works no "deprivation of an accused's substantive rights." The basis of this argument is the notion that Rule 1123(b) Pa.R.Crim.P., permits the legal issues raised in the suppression hearing before the Municipal Court to be reviewed on post-verdict motions in the Court of Common Pleas, a court having the authority to overrule the Municipal Court suppression judge on matters of law. *See Commonwealth v. Bonser,* 215 Pa.Super. 452, 258 A.2d 675 (1969). This, the majority reasons, makes a hearing on the motion to suppress unneces-

sary prior to the trial in the Court of Common Pleas. 'I cannot agree that no prejudice occurs. Several differences exist between Municipal Court trials and trials in the Court of Common Pleas. Although the majority is correct in its assertion that the Municipal Court is a court of record, and that its judges are fully capable of making determinations of fact and of law, proceedings before the Municipal Court are largely of a summary nature, the case load of the Municipal Court is considerably larger than the Court of Common Pleas, and, because of the nature and the number of the cases involved, the amount of time and effort spent in preparation for any individual case is necessarily much less than is spent in preparation for a criminal trial in the Court of Common Pleas. In many respects, the trial in Municipal Court can be viewed simply as a *dress rehearsal* for the yet to come trial in the Common Pleas Court. *See e. g. Ludwig v. Massachusetts*, 427 U.S. 618, 96 S.Ct. 2781, 49 L.Ed.2d 732 (1976). Even if an accused is convicted and sentenced in the Municipal Court, an "appeal" to the Court of Common Pleas will vacate the judgment and result in the automatic grant of a new trial.

Under such circumstances, an attorney representing a criminal defendant at a Municipal Court suppression hearing may not pursue issues as fully and thoroughly as he or she would if the suppression hearing was held prior to a trial in the Court of Common Pleas. This fact is also recognized by the different rules concerning suppression hearings held in the Municipal Court and those in the Court of Common Pleas. The Municipal Court rules provide that a suppression hearing is to be held on the *same day* the trial is to begin and immediately prior thereto. This rule is consistent with the summary nature of the proceedings in Municipal Court, proceedings geared to the speedy disposition of minor criminal cases. On the other hand, the rules governing suppression hearings in the Court of Common Pleas provide that an ap-

plication to suppress must be filed at least *ten days* prior to the scheduled commencement of the trial. Moreover, applications to suppress may be presented orally in the Municipal Court while such motions to the Court of Common Pleas must be written. Thus, it can be seen from the rules of the two courts themselves that the same investigation and preparation is not contemplated in the Municipal Court that is contemplated in the Court of Common Pleas. What may have been adequate representation at a hearing before a Municipal Court therefore might not be effective assistance of counsel if the Municipal Court's suppression hearing was binding upon a criminal defendant at trial in the Court of Common Pleas.

For these reasons, I believe that the "pre-trial" hearing on a motion to suppress evidence is an integral part of the overall judicial proceeding in which all issues affecting the accused's guilt or innocence of the crime charged are to be resolved. *See United States ex rel. Bennett v. Rundle,* 419 F.2d 599 (3d Cir. 1969) (concurring opinion of Stahl, Circuit Judge). A defendant convicted of a crime in Municipal Court, who decides to proceed to a de novo trial in the Court of Common Pleas, as is his or her right under the Act of October 17, 1969, P.L. 259, § 18, as amended, Act of July 14, 1971, P.L. No. 45 (17 P.S. § 711.18), under the Pennsylvania Constitution Art. V, § 6, and under the Schedule to the Judiciary Article, § 16(r)(iii), is therefore entitled to re-litigate all issues, including those raised in "pre-trial" motions to suppress evidence.

ROBERTS, J., joins in this dissenting opinion.