J-S09025-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| CAREY BILLUPS | |
| Appellee | No. 242 EDA 2016 |

Appeal from the Order Entered December 31, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0014851-2013

BEFORE: SHOGAN, STABILE, and PLATT,[*] JJ.

MEMORANDUM BY STABILE, J.:                          **FILED MAY 23, 2017**

The Commonwealth appeals[1] from the trial court's December 31, 2015 order suppressing the alleged victim's identification of Appellee, Carey Billups. We reverse and remand.

Yvette Briggs alleges that, on August 14, 2014, at approximately 10:00 p.m., she was stopped at a traffic light at 41st and Girard Street in Philadelphia when Appellee reached through the partially open passenger side window of her Chevrolet Uplander and stole her pocketbook from the passenger seat. N.T. Motion, 3/13/15, at 6-8, 19. One of Mrs. Briggs' credit

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The Commonwealth has certified, pursuant to Pa.R.A.P. 311(d), that the trial court's order will terminate the prosecution.

cards was later used at a gas station at 39th and Girard. *Id.* at 9. Mrs. Briggs stated the perpetrator looked directly into her face, and she had three or four seconds to look at him. *Id.* at 11, 19. Mrs. Briggs pursued Appellee but he escaped. *Id.* at 8, 11, 30. Mrs. Briggs then contacted police. *Id.* at 8.

At 3:45 a.m. on August 15, 2014, Lieutenant John Barker responded to a report of three armed men standing near a white Infinity in the vicinity of 39th and Girard. N.T. Motion, 12/31/15, at 5, 11. He observed three men meeting the description in the radio report and called for backup. *Id.* at 6-7. Police conducted pat down searches of all three men and recovered no weapons. *Id.* at 7. Lieutenant Barker observed a fourth man near the scene, and surmised correctly that he was the source of the radio report. *Id.* at 7-8. Lieutenant Barker spoke to the fourth man, who turned out to be Mrs. Briggs' husband. *Id.* Mr. Briggs told Lieutenant Barker about the robbery of Mrs. Briggs. *Id.* at 8. Lieutenant Barker told Mr. Briggs that Mrs. Briggs would be needed to make an identification. *Id.* Mr. Briggs called Mrs. Briggs, who arrived shortly thereafter. *Id.*

None of the three men were in handcuffs when Mrs. Briggs observed them. *Id.* at 9. Mrs. Briggs identified Appellee, claiming she was 100% sure he was the perpetrator. N.T. Motion, 3/31/15, at 14. Mrs. Briggs stated that Appellee had changed shirts, but was wearing the same sneakers and pants. *Id.* The record reveals, however, that Mrs. Briggs claimed the

perpetrator was wearing cargo pants but Appellee was wearing sweatpants when Mrs. Briggs identified him. *Id.* at 37. Mrs. Briggs also recognized Appellee by his facial features and beard. *Id.* at 20. In her initial statement to the police, Mrs. Briggs did not mention a beard. *Id.* at 23.

Appellee appeared for trial in Philadelphia Municipal Court on December 2, 2013. He did not move to suppress any evidence prior to the Municipal Court trial. The judge found Appellee guilty of theft by unlawful taking.[2] Appellee appealed for a trial *de novo* before the Philadelphia Court of Common Pleas. After several defense continuances, the *de novo* trial was scheduled to take place on March 31, 2015. On that date, however, Appellee appeared and moved to suppress Mrs. Briggs' identification testimony. According to the Commonwealth's Brief, the Commonwealth objected to litigating a motion to suppress on the date scheduled for trial. The transcript of the March 31, 2015 motion does not record the Commonwealth's objection or the trial court's reasons for permitting Appellee to litigate his suppression motion. After the March 31 and December 31, 2015 hearings, the trial court granted Appellee's motion. December 31, 2015, was the trial judge's last day on the bench. He therefore did not file an opinion explaining his rationale. The December 31, 2015 transcript reflects the following:

---

[2] 18 Pa.C.S.A. § 3921.

- 3 -

Today I learned for the first time that the complainant wasn't called by the police. At 3:30 in the morning her husband was out on the prowl looking for—and justifiably so. I'm not saying there's nothing [sic] wrong with that—but he was looking for someone based on a vague description his wife gave him as to who the person was because Lieutenant Barker testified that when he want up to the man at the corner—

[…]

Lieutenant Barker testified when he saw the gentleman up on the corner he thought he might have been the guy that called in this 'people with a gun.' So he went up there and he confirmed that was the guy that called it in so that tells me that the husband intentionally called in an untrue police report to get the police there—let me finish. And he said that he—that the husband said he would call his wife and have her come down. The police never called the complaining witness. The husband called the complaining witness, which leaves me to believe why would the complaining witness say the police called her. **And when the husband called her it's more likely than not he said, 'Hey, the guy that robbed your purse is down here and the police have him.'** It shines a light, not maybe intentionally, but the complaining witness wasn't being truthful in how she got to the scene and what she was expecting when she got there.

Based on that and her own testimony of the vagueness of why she picked [Appellee] out and that she did expect [Appellee] to be there and that it was her husband who called her and gave her the information as to what to expect when she got there and what was waiting there because the Lieutenant didn't stay with the husband when he called her, I find that her testimony was skewed and it's not believable from the point of view of making a good identification and I grant the motion to suppress.

N.T. Motion, 12/31/15, at 45-48 (emphasis added).

The Commonwealth filed a timely appeal challenging the trial court's order. Before we address the merits, we consider the Commonwealth's argument that Appellee's motion to suppress was procedurally improper. As

the Commonwealth correctly notes, in most cases a defendant must file a pretrial motion within 30 days of arraignment:

> (A) Except as otherwise provided in these rules, the omnibus pretrial motion for relief shall be filed and served within 30 days after arraignment, unless opportunity therefor did not exist, or the defendant or defense attorney, or the attorney for the Commonwealth, was not aware of the grounds for the motion, or unless the time for filing has been extended by the court for cause shown.

Pa.R.Crim.P.579(A). Rule 581(B) provides that a motion to suppress evidence shall be part of the omnibus pretrial motion provided for in Rule 579. Pa.R.Crim.P. 581(B). Rule 581 also provides that an untimely motion results in waiver. *Id.* The Commonwealth also cites **Commonwealth v. Harmon**, 366 A.2d 895 (Pa. 1976) for the proposition that a defendant may not file a suppression motion in between a Municipal Court trial and a *de novo* trial in the Court of Common Pleas. In **Harmon**, the Supreme Court considered whether the Pennsylvania Constitution entitles a defendant to **relitigate** a suppression motion before a *de novo* trial in the court of Common Pleas. *Id.* at 896. The Supreme Court concluded a defendant was not entitled to relitigate a suppression motion before the Court of Common Pleas. *Id.* at 899. Likewise, in **Commonwealth v. Johnson**, 146 A.3d 1271 (Pa. Super. 2016), *appeal denied*, 2016 WL5947287 (Pa. October 13, 2016), this Court wrote that "a defendant [can] not relitigate at the trial *de novo* issues raised, or which could have been raised, at the Municipal Court

suppression hearing." *Id.* at 1274 (quoting *Commonwealth v. Dobson*, 405 A.2d 910, 914 (Pa. 1979)).

In this case, **Harmon** and **Johnson** do not answer the question before us. Here, the question is whether the trial court appropriately permitted Appellee to litigate a suppression motion filed after the Municipal Court trial. Rule 579 does not foreclose the filing of a pretrial motion beyond the 30-day time limit. Rather, the Rule permits an untimely motion where a prior opportunity did not exist, where counsel was unaware of the grounds for the motion, or where the trial court finds good cause. In this case, the certified record does not reveal the basis for the trial court's decision. The only recorded reference to the motion's timeliness came at the end of the December 31, 2015 hearing:

> Your Honor, I know that the Court ruled on procedural objections, but just to preserve the record just in case this case ends up in the Superior or the Supreme Court, for the record the Commonwealth is objecting.
>
> First of all, this motion should be denied without a hearing because it was most importantly waived when it was not brought in Municipal Court. As the Pennsylvania Rules of Criminal Procedure clearly states [sic] that any pretrial motions, specifically a motion to suppress that is not brought in Municipal Court is waived on appeal. Second of all, this motion is moot because it was not brought before—it was brought after the complainant had already identified [Appellee] at trial when he was convicted of all charges. Third, it was not filed in writing and four, it was untimely. I know that Your Honor has already denied the procedural objections, but I just had to put them on the record.

N.T. Motion, 12/31/15, at 36-37.

- 6 -

The Commonwealth cites no other portion of the record in support of its procedural argument (Commonwealth's Brief at 6), and we have found none. As the appellant, the Commonwealth was responsible for ensuring that this Court received a complete record for review. ***Commonwealth v. Bongiorno***, 905 A.2d 998 (Pa. Super. 2006) (*en banc*), *appeal denied*, 917 A.2d 844 (Pa. 2007). The Commonwealth claims it objected before the March 31, 2015 hearing and the trial court permitted Appellee to litigate his suppression motion. The basis for the trial court's ruling was not transcribed or otherwise made a part of the record. We therefore cannot determine whether the trial court's decision was appropriate, and we are constrained to conclude the Commonwealth failed to preserve this issue for review.

We now turn to the merits. The following standard governs our review:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

> Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions.

***Commonwealth v. Korn***, 139 A.3d 249, 253-54 (Pa. Super. 2016) (internal citations and quotation marks omitted), *appeal denied*, 2016 WL 6107660 (Pa. October 18, 2016).

The trial court's rationale for granting Appellee's suppression motion, quoted above, contains a critical finding that the record does not support. Specifically, the trial court surmised that Mr. Briggs told Mrs. Briggs that the police had the guy who robbed her. N.T. Motion, 12/31/15, at 47. Thus, the trial court reasoned that Mrs. Briggs arrived at the scene expecting to see the perpetrator. For that reason, her identification of Appellee was tainted. The trial court reasoned that Mr. Briggs call to Mrs. Briggs "shines a light, not maybe intentionally, but the complaining witness wasn't being truthful in how she got to the scene and what she was expecting when she got there." ***Id.*** at 47-48. The trial court also found that Mrs. Briggs' testimony was "skewed." ***Id.*** at 48.

Mr. Briggs did not testify at the suppression hearing, and there is nothing in the record to support the trial court's finding of what Mr. Briggs said to Mrs. Briggs. The record contains no evidence of the substance of their conversation. We recognize that the trial court characterized Mrs. Briggs' testimony as vague. ***Id.*** at 48. Nonetheless, the trial court's unsupported finding clearly played a significant role in the court's rejection of Mrs. Briggs' credibility and its decision to suppress her identification of

Appellee. Under these circumstances, we reverse the trial court's order and remand for further proceedings.

Order reversed. Case remanded. Jurisdiction relinquished.

Judge Platt joins this memorandum.

Judge Shogan concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2017