## LUDWIG *v.* MASSACHUSETTS

No. 75–377.   Argued April 28, 1976—Decided June 30, 1976

Blackmun, J., delivered the opinion of the Court, in which Burger, C. J., and White, Powell, and Rehnquist, JJ., joined. Powell, J., filed a concurring opinion, *post*, p. 632. Stevens, J., filed a dissenting opinion, in which Brennan, Stewart, and Marshall, JJ., joined, *post*, p. 632.

*Robert W. Hagopian* argued the cause and filed briefs for appellant.

*John J. Irwin, Jr.,* Assistant Attorney General of Massachusetts, argued the cause for appellee. With him on the brief were *Francis X. Bellotti,* Attorney General, and *Barbara A. H. Smith,* Assistant Attorney General.

Mr. Justice Blackmun delivered the opinion of the Court.

The Commonwealth of Massachusetts long ago established a "two-tier" system of trial courts for certain

crimes. A person accused of such a crime is tried in the first instance in the lower tier. No trial by jury is available there. If convicted, the defendant may take a timely "appeal" to the second tier and, if he so desires, have a trial *de novo* by jury. The issues here presented are (1) whether, where the Constitution guarantees an accused a jury trial, it also requires that he be permitted to exercise that right at the first trial in the lower tier, and (2) whether the Massachusetts procedure violates the Double Jeopardy Clause of the Fifth Amendment made applicable to the States by the Fourteenth. *Benton* v. *Maryland,* 395 U. S. 784 (1969).

## I

Massachusetts is one of several States having a two-tier system of trial courts for criminal cases. See *Colten* v. *Kentucky,* 407 U. S. 104, 112 n. 4 (1972). Some States provide a jury trial in each tier; others provide a jury only in the second tier but allow an accused to bypass the first; and still others, like Massachusetts, do not allow an accused to avoid a trial of some sort at the first tier before he obtains a trial by jury at the second.

The first tier of the Massachusetts system is composed of district courts of the State's several counties, and the Municipal Court of the city of Boston. Mass. Gen. Laws Ann. c. 218, § 1 (Supp. 1976–1977). These courts have jurisdiction over violations of municipal ordinances, over misdemeanors except criminal libel, over felonies having a maximum potential sentence of not more than five years, and over specified felonies having a maximum potential sentence in excess of five years. § 26.

A criminal proceeding in the first-tier court is begun with the issuance of a complaint. An accused then has two statutory alternatives. He may plead guilty at arraignment and be sentenced by the court. If he is dis-

satisfied with the sentence, he may appeal. C. 278, § 18. In that case, however, the accused is not entitled to a trial *de novo* respecting his guilt or innocence; he is limited, instead, to a challenge to his sentence. *Commonwealth* v. *Crapo,* 212 Mass. 209, 98 N. E. 702 (1912).

If, on the other hand, the accused pleads not guilty in the first tier, he is tried by the judge without a jury. An acquittal there terminates the proceeding. After a judgment of guilty, however, he may appeal either to the superior court, where a 12-person jury is available, c. 278, §§ 2 and 18 (1972 and Supp. 1976–1977), or to the jury division of the district court where a jury of six is available. C. 218, § 27A; c. 278, § 18 (Supp. 1976–1977). See also *Mann* v. *Commonwealth,* 359 Mass. 661, 663–664, 271 N. E. 2d 331, 333 (1971); *Jones* v. *Robbins,* 74 Mass. 329, 336, 341–342 (1857); Mass. Gen. Laws Ann. c. 278, § 18A (1972).

Unlike the two-tier Kentucky system under consideration in *Colten* v. *Kentucky, supra,* an accused in Massachusetts does not avoid trial in the first instance by pleading guilty. Nevertheless, he achieves essentially the same result by an established, informal procedure known as "admitting sufficient findings of fact." Tr. of Oral Arg. 31. See also *id.,* at 13, 32–33. This procedure is used "[i]f the defendant wishes to waive a trial in the District Court and save his rights for a trial in the Superior Court on the appeal." 30 K. Smith, Massachusetts Practice, Criminal Practice and Procedure § 754 (1970). The trial court then hears only enough evidence to assure itself that there is probable cause to believe that the defendant has committed the offense with which he is charged. The court, however, does make a finding of guilt and enter a judgment of conviction.

Once a person convicted in the district court indicates

that he is going to appeal,[1] his conviction is vacated. He may suffer adverse collateral consequences from the conviction, such as revocation of parole or of his driver's license. Mass. Gen. Laws Ann. c. 90, §§ 24 (1)(b) and (c) (1969 and Supp. 1976–1977). See *Almeida* v. *Lucey,* 372 F. Supp. 109 (Mass.), summarily aff'd, 419 U. S. 806 (1974); *Boyle* v. *Registrar of Motor Vehicles,* —— Mass. ——, 331 N. E. 2d 52, 53 (1975). Moreover, if the accused "fails to enter and prosecute his appeal, he shall be defaulted on his recognizance and the superior court may impose sentence upon him for the crime of which he was convicted, as if he had been convicted in said court." Mass. Gen. Laws Ann. c. 278, § 24 (1972).

If an accused does appeal and does not default, he may, upon request, be tried *de novo* by a jury. If, again, he is found guilty, he may appeal, as of right, to the Massachusetts Appeals Court or to the Supreme Judicial Court where he may raise both factual and legal claims of error. §§ 28, 28B (1972).

## II

On February 1, 1974, in the District Court of Northern Norfolk, appellant Ludwig was charged with operating a

---

[1] Massachusetts Gen. Laws Ann. c. 218, § 31 (1958), governs the execution of sentence. If a sentence of six months or less is imposed, the convicted defendant apparently must state immediately that he intends to appeal. If the sentence exceeds six months, the defendant has one day, before commitment, in which to decide whether to appeal. Although the statute provides that a defendant be informed of his right to appeal, it is unclear whether he also is to be informed that, by appealing, he may secure a trial by jury. Since appellant Ludwig did appeal and then expressly waived a jury in the second tier, we need not address the question whether a failure to take an appeal would constitute a knowing and intelligent waiver of the right to trial by jury. See *Boykin* v. *Alabama,* 395 U. S. 238, 243 (1969).

motor vehicle "negligently . . . so that the lives and safety of the public might be endangered," App. 3a, in violation of Mass. Gen. Laws Ann. c. 90, § 24 (2)(a) (Supp. 1976–1977). This offense carries a maximum penalty of a fine of $200, or two years' imprisonment, or both. On the same day, Ludwig was arraigned and pleaded not guilty.

At the commencement of trial on March 11, appellant moved for a "speedy trial by jury," citing the Fifth and Sixth Amendments. The motion was denied, and, after a brief trial, the court adjudged Ludwig guilty and imposed a fine of $20. Thereafter, appellant asserted his statutory right to a trial *de novo* before a six-man jury in the District Court.

In the *de novo* proceeding, appellant filed a "motion to dismiss" on the grounds that he had been deprived of his federal constitutional right to a speedy jury trial in the first instance, and that he had been subjected to double jeopardy. App. 5a–6a. The motion was denied. At the second trial on April 5, appellant waived a jury and, after trial by the court, again was adjudged guilty, and again was fined $20.

On appeal, the Supreme Judicial Court of Massachusetts affirmed the judgment of conviction. —— Mass. ——, 330 N. E. 2d 467 (1975). Relying on its earlier decision in *Whitmarsh* v. *Commonwealth*, 366 Mass. 212, 316 N. E. 2d 610 (1974), appeal dismissed, 421 U. S. 957 (1975), the court held that the denial of appellant's request to be tried by a jury at his first trial did not violate his right to a speedy trial or to a trial by jury as guaranteed by the Sixth and Fourteenth Amendments, and that the Massachusetts procedure did not violate the constitutional prohibition against putting a person twice in jeopardy.

The present appeal to this Court followed. We noted

probable jurisdiction, 423 U. S. 945 (1975), in order to consider the issues recited in the opening paragraph of this opinion.[2]   See *Costarelli* v. *Massachusetts*, 421 U. S. 193 (1975).

## III

The standard against which we judge whether the Massachusetts two-tier system violates an individual's constitutional right to trial by jury is the Fourteenth Amendment's guarantee that no person may be deprived "of life, liberty, or property, without due process of law." In giving content to this sweeping proscription in the jury trial context, the Court in the past has considered two distinct issues: Whether a State is ever obliged to grant an accused a jury trial, and whether certain features of the 18th century common-law jury are inherent in the right.

In *Duncan* v. *Louisiana*, 391 U. S. 145 (1968), the Court resolved the first issue by reference to, and in the light of, the Sixth Amendment. It held that the right to a jury trial in a "serious" criminal case was "fundamental to the American scheme of justice." *Id.*, at 149.   Accordingly, it held that the "Fourteenth Amendment guarantees a right of jury trial in all criminal cases which—were they to be tried in a federal court—would come within the Sixth Amendment's guarantee." *Ibid.*   Only when an accused is charged with a "petty" offense, usually defined by reference to the maxi-

---

[2] There is a division of opinion concerning the validity of the two-tier procedure typified by the Massachusetts system.   Compare *State* v. *Holliday*, 109 R. I. 93, 280 A. 2d 333 (1971), with *Manns* v. *Commonwealth*, 213 Va. 322, 191 S. E. 2d 810 (1972); *Walker* v. *Dillard*, 363 F. Supp. 921, 924–925 (WD Va. 1973), rev'd on other grounds, 523 F. 2d 3 (CA4), cert. denied, 423 U. S. 906 (1975); *Whitmarsh* v. *Commonwealth*, 366 Mass. 212, 316 N. E. 2d 610 (1974), appeal dismissed, 421 U. S. 957 (1975); *Boyle* v. *Registrar of Motor Vehicles*, —— Mass. ——, 331 N. E. 2d 52 (1975).

mum punishment that might be imposed, does the Constitution permit the Federal Government and the State to deprive him of his liberty without affording him an opportunity to have his guilt determined by a jury. *Baldwin* v. *New York,* 399 U. S. 66 (1970) (plurality opinion).

In *Williams* v. *Florida,* 399 U. S. 78 (1970), and in *Apodaca* v. *Oregon,* 406 U. S. 404 (1972) (plurality opinion), the Court dealt with the second issue by considering whether particular features of the 18th century common-law jury are essential, or merely incidental, to the central purpose of the jury trial requirement. The jury, it was observed, acts as " 'an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge.' " *Williams* v. *Florida,* 399 U. S., at 100, quoting *Duncan* v. *Louisiana,* 391 U. S., at 156. The Court held in *Williams* that a jury of 12 is not required in order that this central purpose be served. Similar analysis led to the holding in *Apodaca* that the jury's verdict need not be unanimous. What is important is that the verdict reflect the commonsense judgment of a group of laymen; this it may do even if it is only a majority verdict "as long as [the jury] consists of a group of laymen representative of a cross section of the community who have the duty and the opportunity to deliberate, free from outside attempts at intimidation, on the question of a defendant's guilt." 406 U. S., at 410–411.

These two issues are not again in controversy in the present case. It is indisputable that the Massachusetts two-tier system does afford an accused charged with a serious offense the absolute right to have his guilt determined by a jury composed and operating in accordance with the Constitution. Within the system, the jury serves its function of protecting against prosecutorial and

judicial misconduct. It does so directly at the second tier of the Massachusetts system, and it may also have an indirect effect on first-tier trials. "Even where defendants are satisfied with bench trials, the right to a jury trial very likely serves its intended purpose of making judicial or prosecutorial unfairness less likely." *Duncan* v. *Louisiana,* 391 U. S., at 158.

This is not to say that we are unaware of a remote possibility that an accused in Massachusetts may be faced at his first trial with an overzealous prosecutor and a judge who is either unable or unwilling to control him. But in such a case, he may protect himself from questionable incarceration by appealing, and insisting upon a trial by jury.

Even though the Massachusetts procedure does not deprive an accused of his Fourteenth Amendment right to a jury trial, the question remains whether it unconstitutionally burdens the exercise of that right: (1) by imposing the financial cost of an additional trial; (2) by subjecting an accused to a potentially harsher sentence if he seeks a trial *de novo* in the second tier; and (3) by imposing the increased psychological and physical hardships of two trials.

Appellant charges that the Massachusetts system financially burdens the accused by requiring that he twice defend himself and by causing a loss of wages if he is employed. Although these burdens are not unreal and although they may, in an individual case, impose a hardship, we conclude that they do not impose an unconstitutional burden on the exercise of the right to a trial by jury. In Massachusetts, the accused may enjoy his right to trial by jury expeditiously by invoking the above-described procedure of "admitting sufficient findings of fact." He, therefore, need not pursue, in any real sense, a defense at the lower tier. The accused, how-

ever, may utilize that proceeding fruitfully as a discovery tool and find the strengths and the weaknesses of the State's case against him. And, of course, if an accused is indigent, the State is required to furnish him counsel without cost before he may be deprived of his liberty. *Argersinger* v. *Hamlin,* 407 U. S. 25 (1972).

The question whether the possibility of a harsher sentence at the second tier impermissibly burdens the exercise of an accused's right to a trial by jury is controlled by the decisions in *North Carolina* v. *Pearce,* 395 U. S. 711 (1969), and *Colten* v. *Kentucky,* 407 U. S. 104 (1972). These cases establish that the mere possibility of a harsher sentence does not unconstitutionally burden an accused's right to a trial by jury. In *Pearce,* a new trial was sought, by taking an appeal, because of error at the first trial. In *Colten,* a new trial was sought in order to secure more ample safeguards available at the higher tier. We see no need to reach a different result here where a new trial is sought in order to obtain a jury.[3] Due process is violated only by the vindictive imposition of an increased sentence. The Court in *Colten* held that the danger of such sentencing does not inhere in the two-tier system.[4] 407 U. S., at 112–119.

---

[3] There is no question, of course, that a person who is accused of crime may receive a fair trial before a magistrate or judge. Cf. *Argersinger* v. *Hamlin,* 407 U. S. 25 (1972). Indeed, the fact that one accused of a "petty" offense punishable by up to six months imprisonment has no constitutional right to be tried by a jury reflects that judgment. In this respect, the present case differs from *Ward* v. *Village of Monroeville,* 409 U. S. 57 (1972).

[4] In support of the contrary contention, appellant cites *United States* v. *Jackson,* 390 U. S. 570 (1968), where the Court held unconstitutional a provision of the Federal Kidnaping Act that permitted the death penalty to be imposed only if recommended by a jury. This provision, by not setting forth a "procedure for imposing the death penalty upon a defendant who waives the right to jury trial or upon one who pleads guilty," *id.,* at 571, discouraged the as-

We are not oblivious to the adverse psychological and physical effects that delay in obtaining the final adjudication of one's guilt or innocence may engender. Protection against unwarranted delay, with its concomitant side effects on the accused, of course, is primarily the function of the Speedy Trial Clause of the Sixth Amendment, made applicable to the States by means of the Fourteenth. *Klopfer* v. *North Carolina*, 386 U. S. 213 (1967). Appellant does not continue to press the con-

sertion of the accused's Sixth Amendment right to demand a trial by jury. In contrast, here, the same range of penalties is available at both tiers.

Appellant also refers to an incident in which a

"trial judge in the Municipal Court of Boston announced that he would impose a one year suspended jail sentence if the defendant would forgo his 'right to appeal' for a trial by jury, or otherwise he would impose a one year sentence. When this attorney objected to the choice the trial judge . . . [stated]: 'Take your pick, one year suspended with no appeal, or one year with appeal.'" Brief for Appellant 37.

Dampening the exercise of a constitutional right, by a method such as that, may be corrected, of course, in individual instances. See *North Carolina* v. *Pearce*, 395 U. S. 711 (1969).

The example, moreover, is not helpful to appellant here. He was not subjected to vindictive sentencing. He received a nominal fine of $20 at both proceedings. Further, the suggestion that vindictive sentencing is a serious problem in Massachusetts is belied by another of appellant's claims:

"In Massachusetts, however, the record of the lower court proceedings, including the sentence imposed, is transmitted to the superior court . . . . If the accused is convicted again, the resentencing judge as a matter of practice usually inquires initially as to why the lower court sentence should not be reimposed." Brief for Appellant 43.

It is argued that this procedure "manifestly discourages 'appeals.'" *Ibid.* We are unable to see why. If the chances are great that an accused who has been convicted at the first tier will receive the same sentence at the second tier if he is again convicted, there is little reason not to appeal and take the "risk" of an acquittal.

tention, made below, that he was denied his constitutional right to a speedy trial. Further, it is nearly always true that an accused may obtain a faster adjudication of his guilt or innocence by waiving a jury trial even in those States where he may have one in the first instance. No one has seriously charged, however, that the fact that trials by jury are not scheduled so quickly as trials before a judge impermissibly burdens the constitutional right to trial by jury. Finally we are uncertain whether the delay in obtaining a jury trial is increased by the *de novo* procedure or decreased. Appellant has not presented any evidence to show that there is a greater delay in obtaining a jury in Massachusetts than there would be if the Commonwealth abandoned its two-tier system. We are reluctant to attribute to Massachusetts a perverse determination to maintain an inefficient system whose very purpose is to increase efficiency.

Our disposition of this case does not require us to disturb the holding in *Callan* v. *Wilson,* 127 U. S. 540 (1888). In *Callan,* this Court considered the validity of a District of Columbia two-tier trial system that provided for trial by jury only in the second tier. The Court announced: "Except in that class or grade of offences called petty offences, which, according to the common law, may be proceeded against summarily in any tribunal legally constituted for that purpose, the guarantee of an impartial jury to the accused in a criminal prosecution, conducted either in the name, or by or under the authority of, the United States, secures to him the right to enjoy that mode of trial from the first moment, and in whatever court, he is put on trial for the offence charged." *Id.,* at 557.

Reconsideration of *Callan* is not required here for two reasons. First, as the Court there recognized, the sources

of the right to jury trial in the federal courts are several and include Art. III, § 2, cl. 3, of the Constitution. That provision requires, in pertinent part, that "[t]he Trial of all Crimes . . . shall be by Jury." This language, which might be read as prohibiting, in the absence of a defendant's consent, a federal trial without a jury is, of course, not applicable to the States. Second, to the extent that the decision in *Callan* may have rested on a determination that the right to trial by jury in a serious criminal case was unduly burdened by a requirement that an accused first be tried without a jury, it is not controlling here. Unlike the District of Columbia system, which apparently required that an accused be "fully tried" in the first tier, 127 U. S., at 557, Massachusetts permits an accused to circumvent trial in the first tier by admitting to sufficient findings of fact.

The modes of exercising federal constitutional rights have traditionally been left, within limits, to state specification. In this case, Massachusetts absolutely guarantees trial by jury to persons accused of serious crimes, and the manner it has specified for exercising this right is fair and not unduly burdensome.

## IV

The final contention is that the Massachusetts procedure violates the Double Jeopardy Clause. The basis of appellant's contention is that "the de novo procedure forces the accused to the 'risk' of two trials." Brief for Appellant 66. Appellee responds by quoting from *North Carolina* v. *Pearce*, 395 U. S., at 719–720: "At least since 1896, when *United States* v. *Ball*, 163 U. S. 662, was decided, it has been settled that this constitutional guarantee imposes no limitations whatever upon the power to *retry* a defendant who has succeeded in getting his first conviction set aside" (emphasis in original). Brief for Appellee 31.

We agree that there is no double jeopardy violation posed by the Massachusetts system. The history of the Double Jeopardy Clause and its interpretation were canvassed by the Court only last Term in *United States* v. *Wilson,* 420 U. S. 332 (1975); *United States* v. *Jenkins,* 420 U. S. 358 (1975); and *Serfass* v. *United States,* 420 U. S. 377 (1975), and need not be repeated here. It is sufficient to say:

> "Although the form and breadth of the prohibition varied widely, the underlying premise was generally that a defendant should not be twice tried or punished for the same offense. . . . Writing in the 17th century, Lord Coke described the protection afforded by the principle of double jeopardy as a function of three related common-law pleas: *autrefois acquit, autrefois convict,* and pardon." *United States* v. *Wilson,* 420 U. S., at 339–340.

In this case, only the concept represented by the common-law plea of *autrefois convict* is presently at issue. The Massachusetts system presents no danger of prosecution after an accused has been pardoned; nor is there any doubt that acquittal at the first tier precludes reprosecution. Instead, the argument appears to be that because the appellant has been placed once in jeopardy and convicted, the State may not retry him when he informs the trial court of his decision to "appeal" and to secure a trial *de novo.*

Appellant's argument is without substance. The decision to secure a new trial rests with the accused alone. A defendant who elects to be tried *de novo* in Massachusetts is in no different position than is a convicted defendant who successfully appeals on the basis of the trial record and gains a reversal of his conviction and a remand of his case for a new trial. Under these

circumstances, it long has been clear that the State may reprosecute. *United States* v. *Ball*, 163 U. S. 662 (1896). The only difference between an appeal on the record and an appeal resulting automatically in a new trial is that a convicted defendant in Massachusetts may obtain a "reversal" and a new trial without assignment of error in the proceedings at his first trial. Nothing in the Double Jeopardy Clause prohibits a State from affording a defendant two opportunities to avoid conviction and secure an acquittal.

The judgment is affirmed.

*It is so ordered.*

MR. JUSTICE POWELL, concurring.

I join the opinion of the Court, as I understand it to be consistent with my view that the right to a jury trial afforded by the Fourteenth Amendment is not identical to that guaranteed by the Sixth Amendment. See my opinion in *Apodaca* v. *Oregon,* reported at 406 U. S., at 369–380 (1972) (concurring in judgment).* I add only that *Callan* v. *Wilson,* 127 U. S. 540 (1888), is distinguishable most simply by the applicability to that case of the Sixth Amendment.

MR. JUSTICE STEVENS, with whom MR. JUSTICE BRENNAN, MR. JUSTICE STEWART, and MR. JUSTICE MARSHALL join, dissenting.

The question in this case is whether Massachusetts may convict a defendant of a crime and sentence him to prison for a period of five years without a jury trial. The Court answers the question in the affirmative for two reasons. First, the conviction is almost meaningless

---

*The plurality opinion in *Apodaca* v. *Oregon* is reported at 406 U. S. 404. My opinion is appended to the Court's opinion in *Johnson* v. *Louisiana,* 406 U. S. 356 (1972), commencing at 366.

since the defendant may have it vacated by an immediate appeal; and second, the defendant may minimize the burden of the trial by, in effect, stipulating that the proof need not establish his guilt beyond a reasonable doubt. To put it mildly, I find these reasons unsatisfactory.

Almost a century ago the Court decided that a comparable procedure was unconstitutional. Referring to a federal criminal proceeding, a unanimous Court stated:

> "But the argument, made in behalf of the government, implies that if Congress should provide the Police Court with a grand jury, and authorize that court to try, without a petit jury, all persons indicted—even for crimes punishable by confinement in the penitentiary—such legislation would not be an invasion of the constitutional right of trial by jury, provided the accused, after being tried and sentenced in the Police Court, is given an unobstructed right of appeal to, and trial by jury in, another court to which the case may be taken. We cannot assent to that interpretation of the Constitution. Except in that class or grade of offences called petty offences, which, according to the common law, may be proceeded against summarily in any tribunal legally constituted for that purpose, the guarantee of an impartial jury to the accused in a criminal prosecution, conducted either in the name, or by or under the authority of, the United States, secures to him the right to enjoy that mode of trial from the first moment, and in whatever court, he is put on trial for the offence charged. In such cases a judgment of conviction, not based upon a verdict of guilty by a jury, is void. To accord to the accused a right to be tried by a jury, in an appellate court, after he has been once fully tried

otherwise than by a jury, in the court of original jurisdiction, and sentenced to pay a fine or be imprisoned for not paying it, does not satisfy the requirements of the Constitution." *Callan* v. *Wilson,* 127 U. S. 540, 556–557.

As is evident from the Court's language, its holding did not rest on any difference between the way the guarantee of the right to a trial by jury is described in Art. III, § 2, cl. 3, and the way the right is described in the Sixth Amendment. The Court's holding reflected the Court's appraisal of the value of the right to a trial by jury.

Before refusing to follow a precedent so nearly in point, I should think the Court would at least ask why Massachusetts *requires* the defendant to stand trial in the first tier before permitting him to have a jury trial. This is a requirement the defendant cannot waive. It is also a requirement which—as far as the record, the briefs, the oral argument, or the opinion announced by the Court today, shed any light on the matter—is totally irrational.[1] All of the legitimate benefits of the two-tier system could be obtained by giving the defendant the right to waive the first-tier trial completely.

The only reason I can perceive for not allowing such a waiver illustrates the vice of the system. A defendant

---

[1] At oral argument the Assistant Attorney General of the Commonwealth was asked to explain the reason for the requirement:

"QUESTION: Well, why not, when the man is going to appeal, why just say, Well, since you're going to appeal and you're going to get a jury trial, you don't have to go through this other one. What good is the first hearing to the State, where you know the man is going to appeal and ask for a jury trial?

"What benefit does the State have for the first tier?

"MR. IRWIN: Well, in the situation that you gave, Mr. Justice Marshall, I would say the State really has no benefit if what you're suggesting is, the situation that I think you are, that where they know he's going to appeal." Tr. of Oral Arg. 34–35.

who can afford the financial and psychological burden of one trial may not be able to withstand the strain of a second. Thus, as a practical matter, a finding of guilt in the first-tier proceeding will actually end some cases that would have been tried by a jury if the defendant had the right to waive the first-tier proceeding. And since the nonjury trial is less expensive and time consuming, the State receives the benefit of an expedited disposition in such a case. The Court quite properly does not rely on any such justification because, if valid, it would justify the complete elimination of jury trials.

There are several reasons why I cannot accept the Court's naive assumption that the first-tier proceeding is virtually meaningless. If it is meaningless for the defendant, it must be equally meaningless for the Commonwealth. But if so, why does the Commonwealth insist on the *requirement* that the defendant must submit to the first trial? Only, I suggest, because it believes the number of jury trials that would be avoided by the required practice exceeds the number that would take place in an optional system. In short, the very purpose of the requirement is to discourage jury trials by placing a burden on the exercise of the constitutional right.

The burden, in my opinion, is significant. A second trial of the same case is never the same as the first. Lawyers and witnesses are stale; opportunities for impeachment that may have little or much actual significance are present in the second trial that were not present in the first; a witness may be available at one time but not the other; the tactics on cross-examination, or on the presentation of evidence, in the first trial will be influenced by judgment of what may happen at the second; the strategy in a nonjury trial may be different than in a proceeding before a jury. Clearly, if a defend-

ant has participated in a full first-tier-nonjury trial, his jury trial in the second tier is significantly different from the normal jury trial.

The Court responds by indicating that "Massachusetts permits an accused to circumvent trial in the first tier by admitting to sufficient findings of fact."[2] But if we presume that the defendant is innocent until proved guilty, we must also assume that the innocent defendant would deny or contradict the evidence offered by the prosecutor. The choice between admitting the truth and also the prima facie sufficiency of evidence the defendant considers false or misleading, on the one hand, or insisting on a full nonjury trial on the other, is not an insignificant price to pay for the exercise of a constitutional right.

---

[2] *Ante,* at 630. This conclusion is based largely on the following comments made by counsel at oral argument:

"QUESTION: In your Massachusetts system, is he able to stand aside at the first tier? As was the case in Kentucky, in *Colten* v. *Kentucky?*

"MR. HAGOPIAN: No, he can't.

"QUESTION: What does he do?

"MR. HAGOPIAN: The most he can do is just sit with his counsel, the government will put on their witnesses; he can—there is an informal procedure, that's not statutory, what's known as submitting to informal admissions of facts. Which means that you're not really going to contest the trial, you'll allow hearsay to go on. The government still puts its parade of witnesses on. But it's a means of speeding up the first tier trial. But he's still convicted if found guilty. But there's no way of bypassing that at all." Tr. of Oral Arg. 13.

Without questioning the accuracy of those comments as they apply in many proceedings, it should be noted that this is not a procedure set forth in any written statute or rule and conceivably may or may not be followed by some of the many judges who preside at first-tier proceedings. In all events, for reasons stated in the text, I consider it an insufficient justification for not allowing the defendant an unequivocal right to waive the first trial entirely.

Nor does the right to a trial *de novo* by taking an immediate appeal make the judge's guilty finding and sentence entirely meaningless. Apart from any legal consequence, the finding certainly tarnishes the defendant's reputation.[3] The finding, and the first judge's sentencing determination may have a greater impact on the second trial judge than the mere return of an indictment. Moreover, if we presume that at least some laymen have some knowledge of the law, we must also recognize the likelihood that some jurors at the second-tier trial will be aware of the first conviction. Such awareness inevitably compromises the defendant's presumption of innocence. Moreover, a judge's instructions cannot adequately avoid this risk of prejudice without creating the additional risk of letting other jurors know about the first conviction.

Unquestionably, in a great majority of proceedings the two-tier system may expedite the disposition of cases and, indeed, may give a defendant two opportunities to establish his innocence. But that fact is of no significance to the individual who wants only one trial and who wants that trial to be conducted before a jury. The Constitution guarantees him that protection; that guarantee is not fulfilled by a State which eventually offers the defendant the kind of trial he is entitled to receive in the first instance. Cf. *Ward* v. *Village of Monroeville*, 409 U. S. 57, 61–62. The burden on the right to a jury trial imposed by Massachusetts is especially un-

---

[3] To dramatize this point, we might make the not entirely unrealistic hypothetical assumption that a defendant might suddenly suffer a fatal heart attack when the trial judge announces his finding and sentence. More realistically, we need simply recognize the fact that many convicted defendants will be unwilling to undergo the ordeal of a second trial after being found guilty by a judge.

acceptable because the Commonwealth has offered no legitimate justification for its *requirement* of a first-tier-nonjury trial.

*Callan* v. *Wilson,* 127 U. S. 540, was correctly decided; it should be followed. I respectfully dissent.