**UNITED STATES,**

v.

**Robert PALEO, Defendant.**

**Cr. No. 89–191–JLT.**

United States District Court,
D. Massachusetts.

Aug. 2, 1994.

Mark G. Miliotis, Miliotis and McQuade, Boston, MA, for defendant.

Carole S. Schwartz, U.S. Attorney's Office, Organized Crime Strike Force, Boston, MA, for the U.S.

### *MEMORANDUM*

TAURO, Chief Judge.

### I.

#### *Background*

On July 25, 1989, a federal grand jury returned a single count indictment against defendant Robert Paleo for possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (forbidding convicted felons from possessing firearms). Subsequently, on August 9, 1989, the government filed notice that it would seek an enhanced sentence under 18 U.S.C. § 924(e) (providing a minimum 15 year sentence for anyone with three prior violent felony convictions who is convicted of violating § 922(g)(1)). The government based its request for an enhanced sentence on four prior felony convictions in Massachusetts state court.

At the sentencing hearing, Paleo opposed imposition of an enhanced sentence arguing (1) that the felonies underlying the asserted convictions were not committed in a violent

manner and therefore did not qualify as "violent felonies;" and (2) that all four of the convictions were constitutionally invalid. Finding for Paleo on both issues, this court denied the government's request and sentenced Paleo to a twenty-one month term of imprisonment. *United States v. Paleo*, 738 F.Supp. 611 (D.Mass.1990). Both parties appealed.[1]

On appeal, the First Circuit vacated Paleo's sentence and remanded the case for a new sentencing hearing. *United States v. Paleo*, 967 F.2d 7 (1st Cir.1992). Relying on the Supreme Court's then recent decision in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the First Circuit held that the sentencing court could not consider the non-violent manner in which the underlying felonies were committed to determine that they were not "violent felonies" under 18 U.S.C. 924(e). *Paleo*, 967 F.2d at 10 ("[W]hat matters, for purposes of deciding whether a felony is "violent," is the statutory definition of the crime, not the way in which a particular offender carried out the crime on a particular occasion."). In addition, while finding that defendants could challenge the constitutionality of prior convictions offered to enhance a sentence under 18 U.S.C. § 924(e), the First Circuit concluded that "[g]iven the uncertainties in the record and the absence of previous instruction," the sentence should be vacated and the case remanded for a new sentencing hearing. *Id.* at 14.

On remand, Paleo again challenges the constitutionality of three of the convictions upon which the government relies in its request for an enhanced sentence. After a careful reexamination of all of the relevant facts and newly emerging legal standards, this court denies the government's request for an enhanced sentence.

**1.** On appeal, Paleo challenged this court's denial of his motion to suppress. Because the First Circuit affirmed that decision, however, it is not revisited in this memorandum.

**2.** On remand, Paleo does not contest that the convictions qualify as convictions for violent felonies.

## II.

### *Analysis*

Under the Armed Career Criminal Act (ACCA), when someone with three previous violent felony convictions arising from three separate incidents is found guilty of violating 18 U.S.C. § 922(g):

> such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g), and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

18 U.S.C. § 924(e). Pursuant to this section, the government seeks an enhancement based on the following four violent felony convictions:[2]

1. June 18, 1980 conviction in Boston Municipal Court for breaking and entering in the day time with intent to commit a felony (Docket No. 3343);

2. June 18, 1980 conviction in Boston Municipal Court for breaking and entering in the day time with the intent to commit a felony (Docket No. 5131);[3]

3. July 1, 1980 conviction in Boston Municipal Court for breaking and entering in the night time with the intent to commit a felony (Docket No. 5643);

4. January 27, 1981 conviction in Suffolk Superior Court for assault and battery by means of a dangerous weapon, and armed robbery (Docket Nos. 031987 and 031621).

On remand, Paleo reasserts his constitutional challenges to the first three of these convictions.[4]

Subsequent to the First Circuit's decision in the appeal of this case, the Supreme Court held that 18 U.S.C. § 924(e) does not

**3.** While this conviction was obtained on the same day as Docket No. 3343, it stems from a completely separate incident.

**4.** Paleo originally challenged the constitutionality of all four prior convictions. At the resentencing hearing, however, Paleo conceded the validity of the fourth conviction.

give courts authority to consider collateral attacks on prior convictions at sentencing. *Custis v. United States,* —— U.S. ——, —— ——, 114 S.Ct. 1732, 1735–37, 128 L.Ed.2d 517 (1994). The Supreme Court went on to hold, however, that the Constitution requires sentencing courts to consider collateral attacks based on lack of counsel. *Id.* at —— ——, 114 S.Ct. at 1737–39.

On remand, Paleo makes several arguments challenging the validity of each of the convictions offered by the government to enhance his sentence. But, Paleo only asserts lack of counsel with respect to two of the convictions, Docket Nos. 3343 and 5634. In light of *Custis,* therefore, Paleo's collateral challenges, which do not involve assertions that he lacked counsel must fail. Furthermore, to the extent that Paleo challenges Docket Nos. 3343 and 5634 for violations other than lack of counsel, those challenges must also fail.

The court will now address Paleo's lack of counsel challenges to Docket Nos. 3343 and 5634.

### 1. *Boston Municipal Court Docket Number 3343* [5]

■ Paleo alleges that he was denied counsel in Docket No. 3343 in violation of his constitutional right to counsel. In support of his claim, Paleo correctly asserts that the certified record does not include an appearance of counsel slip. Furthermore, the record does not include a stamped indication that he was advised of his right to counsel. In fact, the record contains no evidence whatsoever that Paleo was represented by counsel.

Paleo's conviction records indicate that he appeared before Judge Harry J. Elam on June 18, 1980 in Docket Nos. 3343 and 5131.[6] Because Paleo concedes that he was represented by attorney Harold H. Fienman in Docket No. 5131, the government asserts that Fienman must have represented Paleo in Docket No. 3343 as well, and simply forgot to file a separate appearance slip in that case.[7]

In support of this supposition, the government relies in part on the affidavit of Judge Elam. Understandably, Judge Elam has no memory of the conviction itself, or the surrounding circumstances. Nonetheless, Judge Elam speculates:

> While I cannot recall the specific circumstances of Mr. Paleo's convictions, from a review of the records I believe that the attorney who represented Mr. Paleo in docket number 5131 in all likelihood also represented Mr. Paleo in docket number 3343 which was handled on that same day.

Affidavit of Harry J. Elam at ¶ 6. Again, with no specific memory of the relevant events, Judge Elam makes various general statements about his practices on the bench:

> I can state unequivocally that I never held a proceeding in a felony criminal matter without the presence of defense counsel unless the defendant, on the record, expressly, knowingly, and voluntarily waived his or her right to counsel.

Affidavit of Harry J. Elam, ¶ 5.

The government also asserts that Paleo himself admitted that he was represented by Fienman in Docket No. 3343. This court disagrees. Before the original sentencing hearing by this court, Paleo did submit an affidavit in which he averred:

> I changed my plea to the counts contained in Boston Municipal Court complaints numbered 3343 and 5131 of 1980. These change of pleas were not knowingly and intelligently done as I was not informed by my appointed counsel, whose name I do not remember, but appears to be Harold H. Fienman from the appearance slip, or Judge Elam, the presiding judge at my sentencing, of the essential elements of the crimes to which I was pleading, of the

---

**5.** For purposes of this motion, this court presumes that Paleo has the burden of proving the asserted constitutional violation by a preponderance of the evidence.

**6.** On that date, Paleo was "found guilty" in both cases. It is not clear from the record, however,

whether Paleo pleaded to sufficient facts or was found guilty after a bench trial. *See* Second Affidavit of Rosemary Carr at ¶ 8.

**7.** The parties have not submitted any affidavit or testimony from Fienman as he is now deceased.

consequences of a guilty plea or of the constitutional rights I was forfeiting by pleading guilty.

First Affidavit of Robert Paleo at p. 1. In this statement Paleo does not admit that he was represented by Fienman in Docket No. 3343. Indeed, Paleo avers that he does not remember his counsel, but that according to the "appearance slip" he was apparently represented by Fienman. But, the "appearance slip" to which Paleo refers in his affidavit could not have involved Docket No. 3343, as it is clear beyond question that no appearance slip was filed in that case. Furthermore, Paleo later clarified his original statement in a second affidavit submitted to this court for resentencing:

> In regard to Complaint No. 3343 for which I was arrested on 4/21/80, and appeared in the Boston Municipal Court on 4/22/80, 5/20/80 and 6/18/80; I never retained counsel, nor was counsel ever appointed to represent me as far as I know.

First Affidavit of Robert Paleo at ¶ 1.

Not only does this second affidavit clarify Paleo's previous statement, it also points out a major defect in the government's argument. The record indicates that Fienman was not appointed to represent Paleo in any matter until June 12, 1980, well after Paleo's April and May appearances in Docket No. 3343. If, as the government suggests, Fienman merely failed to file a separate appearance slip, it would be more likely that he would have filed his appearance in the first case, Docket No. 3343, and would have forgotten to file a separate appearance slip in the second case, Docket No. 5131. Having filed an appearance in Docket No. 5131, therefore, it appears more likely that Fienman was not representing Paleo in Docket No. 3343.

Finally, if Fienman represented Paleo and merely forgot to file a separate appearance slip in Docket No. 3343, the record would still have been stamped "DEFENDANT ADVISED BY COURT OF RIGHT TO HAVE COUNSEL" as the record for Docket No. 5131 is stamped.

This court recognizes that after the Supreme Court's decision in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), uncounseled felony convictions are rare. *United States v. Wilkinson*, 926 F.2d 22, 28 (1st Cir.1991). Nevertheless, after carefully weighing all of the evidence presented, the court finds, as a matter of fact, that it is more likely than not that Paleo was not represented by counsel in Docket No. 3343, nor did he waive his right to counsel in that case. Accordingly, that conviction cannot be used to enhance his sentence under 18 U.S.C. § 924(e). *Custis*, —— U.S. at —— – ——, 114 S.Ct. at 1737–39.

### 2. *Boston Municipal Court Docket Number 5634*

On July 1, 1980, Paleo was found guilty of breaking and entering in Docket No. 5634.[8] Subsequently, on July 14, 1980, Paleo was sentenced to a two year suspended sentence with two years probation. As a special condition of probation, Paleo was to participate in a program at the Meridian House, a substance abuse facility in East Boston.

When Paleo reported to the Meridian House, he realized that the program there would not help him to overcome his emotional problems. Indeed, Paleo believed that the program would be detrimental to him in light of the unavoidable exposure to chronic drug addicts. Accordingly, Paleo voluntarily returned to Boston Municipal Court on July 16, 1980, two days after his original sentence, in order to seek a more appropriate program for his particular problems.

Upon returning to court, Paleo appeared before Judge Theodore A. Glynn. Apparently unable to find a more suitable treatment program at the time, Judge Glynn revoked and revised Paleo's sentence. Under the revised sentence, Paleo was given two years of confinement in the Deer Island House of Correction, with the second year suspended.

On remand, Paleo asserts to this court that he was not represented by counsel at the July 16, 1980 resentencing in Docket No. 5634, and argues that this constitutional er-

---

**8.** As with Docket No. 3343, it is unclear whether Paleo was found guilty after a bench trial or after admission to sufficient facts. *See* Second Affidavit of Rosemary Carr at ¶ 8.

ror prohibits this court from using the underlying conviction in that case to enhance his sentence. In response to these assertions, the government first argues that Paleo was either represented by counsel or waived his right to counsel at the resentencing. In the alternative, the government argues that, even if Paleo was resentenced in violation of his right to counsel, such an error would not affect the constitutional validity of the underlying conviction. The parties' conflicting views present two fundamental issues that will be addressed below.

### a. Was Paleo Represented By Counsel at Resentencing?

■ Paleo maintains that he was not represented by counsel at the resentencing in Docket No. 5634:

> When I appeared in Court on 7/16/80, I came on my own without counsel. A court officer assisted me in having the court papers brought before Judge Glynn.

Second Affidavit of Robert Paleo at ¶ 3. *See also* First Affidavit of Robert Paleo at p. 3. In support of this assertion, Paleo also submitted the affidavit of Thomas A. Connors, the attorney appointed to represent Paleo in Docket No. 5634. In his affidavit, Connors states:

> I was the [attorney] appointed to represent the Defendant, Robert Paleo, in Complaint 5634 of 1980 on June 26, 1980. On July 1, 1980 after trial, Defendant was found guilty by Justice Glynn, and sentencing was continued to July 14, 1980. On that date, Mr. Paleo was sentenced by Judge Glynn to the House of Correction for two years, but had the sentence suspended and was placed on probation until June 9, 1982. I was present for the trial and for the hearing on July 14, 1980, *which was the last time, to my memory, that I represented Mr. Paleo on this matter.*
>
> Mr. Paleo's present attorney, Mark W. Bixby, has indicated to me that Mr. Paleo was resentenced by Judge Glynn on July 16, 1980. *To my recollection, I was not present at this resentencing.*

Affidavit of Thomas A. Connors at p. 1 (emphasis added).

In response to Paleo's argument, the government offers the affidavit of Judge Glynn who presided at the trial, sentencing, and subsequent resentencing. Judge Glynn has no memory of the resentencing. Instead, he can only aver as to his general practices:

> I can state unequivocally that I never held a proceeding in a felony criminal matter without the presence of defense counsel unless the defendant, on the record, expressly, knowingly, and voluntarily waived his or her right to counsel.
>
> . . . .
>
> The certified records of the Boston Municipal Court in docket number 5634 indicate that Mr. Paleo's suspended sentence was revoked, and he was committed to the House of Corrections on July 16, 1980. I can state unequivocally that I never resentenced a defendant, or held a revocation hearing, without the presence of counsel, unless the defendant, on the record, expressly, knowingly, and voluntarily waived his or her right to counsel. I have no reason to believe that I deviated from the practice and procedure in Mr. Paleo's case.

Affidavit of Theodore A. Glynn at ¶ 4, ¶ 13.

Although Judge Glynn's lack of memory is understandable, his reconstruction of what must have happened is not persuasive. On the other hand, this court finds Connors' statements that he was not present at the July 16, 1980 resentencing to be persuasive on the issue. Indeed, Connors' corroborates Paleo's own recollection that no counsel was present at the July 16, 1980 resentencing. Based on the evidence submitted, this court finds, as a matter of fact, that Paleo was not represented at the July 16, 1980 resentencing.

In addition, this court finds that Paleo did not waive his right to counsel at the July 16, 1980 resentencing. The court record does not indicate any such waiver, corroborating Paleo's memory that he did not waive his right to counsel. *See* Second Affidavit of Robert Paleo at ¶ 3. Further, handwritten notes on the record of conviction indicate that Paleo waived his right to a preliminary hearing at his July 16, 1980 appearance. If he had also waived his right to counsel, this fact would likely have been recorded as well.

b. *Having found that Paleo Was Not Represented by Counsel at Resentencing, Does this Error Invalidate the Underlying Conviction Itself?*

■ The government argues that, even if Paleo was not represented by counsel at the July 16, 1980 resentencing, this error only invalidates the sentence and not the underlying conviction. This court acknowledges that, under normal circumstances, lack of counsel at sentencing only entitles the defendant to a new sentencing proceeding with counsel. *See, e.g., United States v. Mateo,* 950 F.2d 44, 48–50 (1st Cir.1991). But, the mechanics of the two-tier trial system employed by the Boston Municipal Court in 1980, and the peculiar circumstances surrounding the resentencing in Docket No. 5634, cause this court to conclude that Paleo's lack of representation infected both the underlying conviction as well as the revised sentence.

In July 1980, Mass.Gen.L. ch. 278, § 18 provided that:

> Whoever is found guilty of a crime before a justice in a district court, or in the municipal court of the city of Boston, having filed the written waiver of trial by jury in the first instance ... may appeal the finding of guilty or the sentence imposed thereon to a jury-of-six session ... and at such finding of guilty or sentencing shall be notified of his right to take such appeal.... Notwithstanding any other provision of law, a defendant after a finding of guilty, jury-waived, in a district court, or the municipal court of the city of Boston, may appeal therefrom and shall thereafter be entitled to a *trial de novo in a jury-of-six session* in accordance with [chapter 218, section 27A].

Mass.Gen.L. ch. 278, § 18, *amended by* 1992 Mass.Acts ch. 379, § 193 (emphasis added).

The record indicates that Paleo either admitted to sufficient facts or was found guilty after a bench trial on July 1, 1980. Under Mass.Gen.L. ch. 278, § 18, therefore, Paleo clearly had the right to appeal to a de novo jury trial at the July 14, 1980 sentencing.

Indeed, the record for the initial sentencing is stamped "N.R.A." indicating that Paleo was in fact notified of his right to appeal at that time. *See* Second Affidavit of Rosemary Carr at ¶ 14.

According to the record, Paleo voluntarily returned to court on July 16, 1980. Judge Glynn, unable to find a more appropriate treatment program, revoked suspension of Paleo's original sentence and imposed a revised sentence calling for confinement. As has been found by this court, Paleo did not have counsel when Judge Glynn imposed this new sentence calling for confinement.

Paleo asserts that he had a right to appeal to a de novo jury trial at the July 16, 1980 resentencing and, therefore, his lack of counsel at that time invalidates the underlying conviction as well as the revised sentence. In order to properly analyze this claim, the court must first determine whether Paleo had the right to appeal to a de novo jury trial at the July 16, 1980 resentencing.

The Supreme Judicial Court has ruled that probation violators do not have a right to appeal under Mass.Gen.L. ch. 278, § 18 when their probation is revoked and a term of imprisonment is imposed. *See Marino v. Hibbard,* 243 Mass. 90, 137 N.E. 369 (1922); *Younker v. District Court of Natick,* 374 Mass. 31, 370 N.E.2d 1371 (1977). But, Paleo's voluntary July 16, 1980 appearance before Judge Glynn did not involve a probation violation and, therefore, both *Marino* and *Younker* are clearly distinguishable. In both *Marino* and *Younker,* the plaintiffs were compelled to appear before the district court for violating the terms of their probation. Paleo, however, was not a probation violator. To the contrary, it is undisputed that Paleo appeared before Judge Glynn voluntarily on July 16, 1980. Indeed, there is no evidence that Paleo violated the terms of his probationary sentence imposed only two days earlier. Rather, Paleo, the only person with any memory of the resentencing, avers that he returned to court to request a different treatment program, not because he had violated the terms of his probation:

My reason for coming back to court that day was to see if I could go someplace else for help besides the Meridian House. I recall the judge being concerned about where I might be placed, but concluding that I would have to go to Deer Island because there was not another available facility. At the time, I felt like the judge had no alternative but to send me to jail. I was not aware of any other option, although, when I came back to court that day, I did not think that I was necessarily going to end up in prison.

Second Affidavit of Robert Paleo at ¶ 3.[9]

In light of the evidence presented, this court finds, as a matter of fact, that Paleo voluntarily returned to the district court to seek a different program, not because he had violated his probation. Based on this finding, this court holds that *Marino* and *Younker* are inapposite. Unlike the situations presented in *Marino* and *Younker*, Judge Glynn's actions were consistent with a sentencing, not a probation violation hearing. Indeed, Judge Glynn did not base Paleo's revised sentence on some post-conviction probation violation, but solely on the underlying July 1, 1980 conviction.

This court concludes, therefore, that Paleo was entitled to appeal to a de novo jury trial under Mass.Gen.L. ch. 278, § 18 at the July 16, 1980 resentencing. Indeed, this conclusion is consistent with the record of Judge Glynn's resentencing which is stamped "N.R.A." indicating that Paleo was advised of his right to appeal at that time.

And so, Paleo had to decide, without the assistance of counsel, whether to exercise his right to appeal to a de novo jury trial—and thereby automatically vacate the underlying conviction. Paleo's lack of representation at this crucial stage most certainly invalidates his conviction. Indeed, if he had been represented, he may have chosen to appeal, rather than go to jail, in which case the underlying conviction would have been vacated automatically.[10] The court concludes, therefore, that the conviction obtained in Docket No. 5634 cannot be used to enhance Paleo's sentence under 18 U.S.C. § 924(e).

### III.

### *Conclusion*

For the foregoing reasons the court denies the government's request to enhance Paleo's sentence.

An order will issue.

### *ORDER*

For the reasons stated in the accompanying Memorandum, the court hereby orders as follows:

1. The government's request to enhance defendant's sentence pursuant to 18 U.S.C. § 1924(e) is DENIED;

2. Defendant's motion to exempt use of convictions under 18 U.S.C. § 921(a)(20) is MOOT; and

3. Defendant's motion to be released pending sentencing is MOOT.

IT IS SO ORDERED.

---

9. The court notes that the government does not argue that Paleo appeared before Judge Glynn on July 16, 1980 for any other reason than to be transferred to another treatment facility.

10. *Cf. Ludwig v. Massachusetts,* 427 U.S. 618, 622 n. 1, 96 S.Ct. 2781, 2784 n. 1, 49 L.Ed.2d 732 (1976) (recognizing the similarity between failure to appeal to de novo jury trial and waiving the right to trial by jury under the two-tier system employed by Massachusetts).