Rochester District Court
No. 2004-822

## IN RE JUVENILE 2004-822

Argued: October 20, 2005
Opinion Issued: December 30, 2005

*Kelly A. Ayotte*, attorney general (*Stephen D. Fuller*, senior assistant attorney general, on the brief and orally), for the State.

*Andrew Winters*, assistant appellate defender, of Concord, on the brief and orally, for the juvenile.

NADEAU, J. The juvenile appeals an order of the Rochester District Court (*Cappiello*, J.) sentencing him to a suspended jail term. He argues that: (1) RSA 169-B:19, III-c (Supp 2005) is unconstitutional because it establishes a system of juvenile jury trials that subjects juveniles to double jeopardy; and (2) that the trial court erred in imposing a suspended jail sentence because RSA 628:1 (Supp. 2005) precludes holding a person "criminally responsible" for an act he committed when he was twelve years old. We affirm.

The limited record reflects the following facts. At the age of seventeen, the juvenile was charged with delinquency and aggravated felonious sexual assault, which he allegedly committed at the age of twelve. Following an adjudicatory hearing, the court found the juvenile petition "true." Prior to the dispositional hearing, counsel for the juvenile filed a memorandum of law arguing that the court could not legally sentence the juvenile to a suspended jail sentence. After a hearing, the court sentenced the juvenile to a suspended jail term of twelve to eighteen months.

The juvenile argues that RSA 169-B:19, III-c is unconstitutional because it subjects juveniles to double jeopardy in violation of *Breed v. Jones*, 421 U.S. 519 (1975). Specifically, he argues that under the procedure established by RSA 169-B:19, III-c, a juvenile who chooses to have a jury trial faces two trials, which violates the Double Jeopardy Clauses of the State and Federal Constitutions. Because the constitutionality of a statute involves a question of law, we review the trial court's determination *de novo. State v. Kepple*, 151 N.H. 661, 664, *cert. denied*, 125 S. Ct. 2918 (2005).

The legislature enacted RSA 169-B:19, III-c following our decision in *In re Jeffrey C.*, 146 N.H. 722 (2001). There we held that the New Hampshire Constitution bars the State from incarcerating juvenile offenders in adult correctional facilities without first affording them the right to a jury trial. *Id.* at 724. Because no New Hampshire statute authorized a juvenile jury trial at the time *Jeffrey C.* was decided, we held that RSA 169-B:19, III (2002) and RSA 169-B:19, III-a (2002) were unconstitutional to the extent that they allowed incarceration of juveniles in adult correctional facilities. *Id.* at 725.

The legislature enacted RSA 169-B:19, III-c, establishing a juvenile jury trial procedure, effective January 1, 2003. RSA 169-B:19, III-c (a) provides in relevant part that any juvenile whose disposition includes an imposed, suspended, or deferred sentence to an adult correctional facility "shall not be committed without first being afforded the right to a jury trial or

waiving the right to a jury trial." RSA 169-B:19, III-c (b) provides in relevant part that any such juvenile "may, after the disposition is issued, request a *de novo* trial before a jury" by filing a request within three days of his original adjudication. Whenever possible, the *de novo* jury trial shall be held in a district court building equipped with jury capability, RSA 169-B:19, III-c (b), and in all cases it shall be conducted by a specially assigned district court judge. *Id.* RSA 169-B:19, III-c (c) provides in relevant part that "[t]he court in which the petition originated shall retain jurisdiction over all matters and orders pertaining to the placement, supervision and treatment of the juvenile during the pendency of the pre-trial and trial proceedings," but any previous disposition involving incarceration will be vacated pending the *de novo* jury trial. If the jury returns a finding of true, the *de novo* trial court may "reinstate or modify only those portions of the dispositional order made by the originating court [that were] suspended . . . during the pendency of the *de novo* process." RSA 169-B:19, III-c (d).

The juvenile first relies upon the United States Supreme Court's decision in *Breed v. Jones*, but nothing in *Breed* precludes a *de novo* appeal for a juvenile. The *Breed* Court only prohibited the transfer of a case to an adult court where the juvenile would be tried as an adult after the juvenile had been adjudicated in juvenile court. *Breed*, 421 U.S. at 541. By contrast, a juvenile requesting a *de novo* trial pursuant to RSA 169-B:19, III-c, is not transferred to a court of general criminal jurisdiction; rather, the case remains in the juvenile court system and the juvenile does not stand trial as an adult. Thus, *Breed* is inapposite.

RSA 169-B:19, III-c provides a *de novo* jury trial for juveniles who are found to be delinquent and sentenced to committed, suspended, or deferred jail time extending beyond their seventeenth birthday. A similar *de novo* jury trial is provided to certain adult defendants. An adult defendant who has been convicted of a class A misdemeanor in a district court without a jury has the right to a *de novo* trial in the superior court with a jury. *See State v. Handfield*, 115 N.H. 628, 630 (1975) (decided under prior law), *cert. denied*, 427 U.S. 909 (1976); RSA 502-A:12 (1997); RSA 599:1 (2001); *see also* RSA 592-A:2 (2001). The effect of such an appeal is to vacate the district court judgment. *Jenkins v. Canaan Mun. Ct.*, 116 N.H. 616, 618 (1976).

The United States Supreme Court, in *Ludwig v. Massachusetts*, 427 U.S. 618 (1976), considered a double jeopardy challenge to a similar *de novo* trial system in place in Massachusetts for adults convicted of misdemeanors in the district court. In *Ludwig*, the Supreme Court rejected the same double jeopardy claim that the juvenile has raised in the instant case. *See id.* at 631. In holding that the Massachusetts system did

not violate the constitutional protection against double jeopardy, the Court reasoned:

> [T]he decision to secure a new trial rests with the accused alone. A defendant who elects to be tried *de novo* in Massachusetts is in no different position than is a convicted defendant who successfully appeals on the basis of the trial record and gains a reversal of his conviction and a remand of his case for a new trial. Under these circumstances, it long has been clear that the State may reprosecute. The only difference between an appeal on the record and an appeal resulting automatically in a new trial is that a convicted defendant in Massachusetts may obtain a "reversal" and a new trial without assignment of error in the proceedings at his first trial. Nothing in the Double Jeopardy Clause prohibits a State from affording a defendant two opportunities to avoid conviction and secure an acquittal.

*Id.* at 631-32 (citation omitted).

The juvenile attempts to distinguish *Ludwig* on the basis that juveniles in New Hampshire cannot waive the first non-jury trial, and thus they must have two trials in order to exercise their right to a jury trial. The Massachusetts scheme at issue in *Ludwig*, however, similarly did "not allow an accused to avoid a trial of some sort at the first tier before he obtain[s] a trial by jury at the second." *Id.* at 620. The *Ludwig* Court noted, however, that the defendant could "enjoy his right to trial by jury expeditiously by invoking the ... procedure of 'admitting sufficient findings of fact'" in the first trial, having the judge find him guilty and impose a sentence, and then requesting his *de novo* trial by jury. *Id.* at 626. On the other hand, as the *Ludwig* Court pointed out, a defendant could "utilize [the first] proceeding fruitfully as a discovery tool and find the strengths and the weaknesses of the State's case against him." *Id.* at 627.

 A juvenile charged by petition in New Hampshire is afforded a similar opportunity to forgo a full contest of the charges in the initial adjudication by having the district court enter a finding of "true," and proceeding directly to his *de novo* jury trial. Nothing in RSA 169-B:19, III-c prohibits this type of summary procedure. The statute expressly provides that no juvenile may be sentenced to an adult correctional facility "without first being afforded the right to a jury trial or waiving the right to a jury trial." RSA 169-B:19, III-c. Accordingly, without a waiver of his right to a jury trial, the juvenile must be afforded that right before a sentence to an adult correctional facility can be imposed. *In re Jeffrey C.*,

146 N.H. at 725. Thus, RSA 169-B:19, III-c imposes no greater hardship upon a juvenile than is placed upon an adult defendant who is first tried for a class A misdemeanor in district court. Therefore, just as the adult defendant's double jeopardy rights are not violated by the *de novo* trial system, there is no double jeopardy bar to allowing the juvenile to elect or waive a *de novo* jury trial after an initial adjudication.

Next, the juvenile argues that the plain language of RSA 628:1 precludes holding a person criminally responsible for an act he committed when he was twelve years old, and that by imposing a suspended jail sentence, the court held him criminally responsible. The juvenile contends that because he was only twelve years old when he committed the aggravated felonious sexual assault, the plain language of RSA 628:1 precluded the court from sentencing him to a term of incarceration in an adult facility. We disagree.

RSA 628:1, I, in relevant part provides that, for most offenses, "a person less than 15 years old is not criminally responsible for his conduct, but may be adjudged to be a juvenile delinquent." Pursuant to RSA 628:1, I, then, a juvenile who committed an offense when he was twelve years old may be found to be a juvenile delinquent, as was the case here. The juvenile contends that when a district court sentences a juvenile to incarceration in a house of corrections, it thereby holds the juvenile "criminally responsible" for purposes of RSA 628:1. He argues that *Jeffrey C.* stands for the proposition that a juvenile is necessarily held "criminally responsible" whenever a sentence to an adult correctional facility is imposed. We disagree.

In *Jeffrey C.* we held that the incarceration of a delinquent juvenile in an adult correctional facility was unconstitutional where the juvenile had not been afforded a jury trial. *In re Jeffrey C.*, 146 N.H. at 724. In response to that ruling, the legislature amended RSA 169-B:19 to grant juveniles facing incarceration in an adult facility a *de novo* trial by jury at their election.

To be held "criminally responsible" for aggravated felonious sexual assault is to be treated as an adult: to be tried in superior court after an indictment and subject to the full range of criminal penalties for that offense. *Cf.* RSA 628:1, II (juvenile between thirteen and seventeen, who committed one or more of certain offenses when he was between thirteen and fifteen, may be held criminally responsible, but only after certification under RSA 169-B:24 and transfer to the superior court). Nothing in *Jeffrey C.* suggests that by sentencing a juvenile to a term of incarceration, the juvenile has been found guilty of a crime and thus been held "criminally responsible."

■ The juvenile here was afforded all the protections that attend juvenile proceedings, including confidentiality of the proceedings and the closing of his case once he becomes twenty-one years old. *See* RSA 169-B:4, VI (2002); RSA 169-B:34-:38 (2002 & Supp. 2005). The juvenile has not been found guilty of a crime and no such conviction has been entered on the record. At no time was the juvenile's case transferred to the superior court, nor was he subjected to an adult proceeding or any penalties that were not authorized under RSA chapter 169-B, which establishes the procedures and penalties for juvenile delinquents. Although the juvenile's sentence included a suspended term in an adult correctional facility by virtue of the fact that he was seventeen years old at the time of his adjudication, the adjudication of "true" was not equivalent to a finding of guilt in a criminal proceeding. Accordingly, we find no violation of RSA 628:1.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.